(No. 12737.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* EDWARD DORAS, Plaintiff in Error.

*Opinion filed October 27, 1919—Rehearing denied Dec. 4, 1919.*

1. CRIMINAL LAW—*minimum punishment for manslaughter is one year.* Under section 146 of the Criminal Code, providing that the punishment for manslaughter shall be imprisonment in the penitentiary for life or for any number of years, the minimum punishment is imprisonment for one year.

2. SAME—*Parole law does not affect minimum term of imprisonment.* The Parole law does not affect the minimum sentence for the crime of manslaughter as that law does not apply until after the minimum term of imprisonment has been served, and the action of the department of public welfare in releasing a convict on parole after he has served the minimum term is an act for his benefit and has nothing to do with the minimum term of his sentence.

3. SAME—*term of parole is not part of term of imprisonment.* While a convict on parole is still under the control of the State the term of his parole cannot be said to be a part of the term of his imprisonment in the penitentiary. (*People* v. *Hartsig,* 249 Ill. 348, and *George* v. *People,* 167 id. 447, distinguished.)

DUNN, C. J., and CARTWRIGHT and DUNCAN, JJ., dissenting.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. M. HENRY GUERIN, Judge, presiding.

CHARLES E. ERBSTEIN, and CHARLES P. R. MACAULAY, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, MACLAY HOYNE, State's Attorney, and EDWARD C. FITCH, (E. E. WILSON, and D. G. RAMSEY, of counsel,) for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

The plaintiff in error was found guilty of manslaughter, under an indictment charging murder, in the criminal court of Cook county.

The facts as detailed by the witnesses for the prosecution show that on the evening of September 12, 1918, a number of men, among whom were Anton Kwiatkowski, the deceased, and Joseph Swierzbinski, were in the saloon of John Sczepanek, at 12357 Parnell avenue, West Pullman, in the city of Chicago. About 9:30 o'clock the plaintiff in error, Edward Doras, with two companions, entered the saloon and ordered three bottles of beer. Swierzbinski was standing near the bar, and while there Doras became involved in a quarrel with him and struck him in the face. Doras then pulled his coat back, revealing his star, and stated that he was a detective. Doras and his two companions were ejected from the saloon by way of the front door.. They crossed the street to a point opposite the saloon, where they were heard talking. Kwiatkowski apparently took no part in the difficulty between Doras and Swierzbinski. Soon thereafter the wife of Kwiatkowski entered by the rear door of the saloon and called to her husband to go home with her. They passed out of the saloon by the side door. Soon thereafter a shot was fired by Doras, whereupon the deceased and his wife, with one Olszewski, turned back. The two men entered the saloon ahead of Mrs. Kwiatkowski and someone closed the door, preventing her entrance. She testified that as she was attempting to follow her husband and Olszewski, Doras ap-

proached her and attempted to strike her with a revolver but missed her; that he then opened the side door and fired a shot in the direction of Kwiatkowski. Immediately after this shot was fired Kwiatkowski fell to the saloon floor with a bullet wound in the abdomen, from which he soon after died. After the shooting Doras was held in the saloon until a patrol wagon came, during which time he was beaten with billiard cues and other missiles.

The uncorroborated testimony of the defendant, Edward Doras, is, in substance, that he and the two companions above referred to entered the saloon at the time described and that he ordered beer for himself and companions; that he sought information from the bar-tender relative to certain people near by, whom he suspected in connection with the unlawful taking of lumber from a milk station then being torn down; that after making this inquiry the three men started out of the saloon, his two companions preceding the plaintiff in error; that as he walked towards the door he saw Swierzbinski standing up against the side of the building; that as plaintiff in error was passing through the door he was violently seized by the arms by someone who pinned his arms behind him; that as he turned around to see who had seized him, the proprietor of the saloon came from behind the bar and took the revolver of plaintiff in error from its holster and struck plaintiff in error on the head with it; that he struggled to get away, during which time he was struck with billiard cues and other missiles and knocked down; that believing his life was in danger he called patrolman Barry to give him a gun; that he received a kick between the eyes which caused his nose to be broken, and four cuts on the cheek and four across the head, after which he fired a shot to protect himself; that he was in a dazed and semi-conscious condition when the patrol wagon arrived. He denied having struck Swierzbinski and denied having fired a shot in the street or in the doorway. He testified that he fired but one shot.

There were two revolvers offered in evidence. The plaintiff in error identified one as his and the other as Barry's. The proprietor of the saloon denied hitting the plaintiff in error with a gun. There was no corroboration of plaintiff in error's testimony in any particular.

It is contended by plaintiff in error as grounds for reversal, first, that it was error to sentence him under the Parole law; that the Parole law does not apply to the crime of manslaughter and the jury should therefore have fixed the punishment; and second, that the court erred in giving and refusing instructions.

It is urged in support of plaintiff in error's first contention, that if the Parole law be held to apply to manslaughter it would result in increasing the minimum sentence from one year to eighteen months, for the reason that a convict paroled cannot be discharged from parole in less than six months. Section 2 of the Parole law provides that a convict may be discharged from the penitentiary without parole, by and with the consent of the Governor. It is also provided in section 11 of said act that a convict paroled can not be discharged from parole without the consent of the Governor. It is also provided by section 7 that no one convicted of crimes referred to in section 2 and sentenced to the penitentiary shall be eligible for parole until a minimum sentence of at least one year has been served nor until the minimum sentence provided by the law fixing the punishment has been served. The provision of the Criminal Code fixing punishment for manslaughter, so far as it relates to this question, is as follows: "Whoever is guilty of manslaughter shall be imprisoned in the penitentiary for his natural life, or for any number of years." (Hurd's Stat. 1917, sec. 146, p. 984.) This section is in this regard the same as the act of 1859, which has been held to fix the minimum punishment for manslaughter at one year. *Mullen* v. *People*, 31 Ill. 444.

It will be seen from the provisions of the sections of the Parole law referred to, that a convict may be discharged from the penitentiary without being paroled, by and with the advice and consent of the Governor, or he may be paroled after having served the minimum sentence provided by law. The Parole law places in the department of public welfare the power to determine when, if at all, a person is entitled to parole, subject to the provision that he shall have served the minimum sentence provided by law. The minimum sentence having been served, the law provides that the department of public welfare may parole the convict, or, with the consent of the Governor, discharge him. It will be seen, therefore, that the operation of the Parole law in nowise affects the minimum sentence provided by law.

The plaintiff in error contends that the term of parole must be considered a part of the term of imprisonment in the penitentiary fixed by law. Section 146 of the Criminal Code, herein referred to, fixes the punishment for manslaughter at imprisonment in the penitentiary. When on parole the convict cannot be said to be imprisoned in the penitentiary. While he is still under the control of the State during his term of parole, it does not follow that he is serving a term of imprisonment in the penitentiary.

The case of *People* v. *Hartsig*, 249 Ill. 348, cited by the plaintiff in error is not an authority supporting his contention, as the question here considered was not there involved. In *George* v. *People*, 167 Ill. 447, also cited by plaintiff in error, it was held that in permitting a convict to leave prison on parole the board of pardons did not thereby affect his sentence and did not exercise judicial power. That case is likewise not in point.

The action of the department of public welfare in releasing a convict on parole after he has served the minimum term of imprisonment fixed by law is an act for his benefit and has nothing to do with the minimum term of imprisonment in the penitentiary imposed upon him. The Parole

law does not apply until after the minimum term of imprisonment has been served. It was held in *People* v. *Peters,* 246 Ill. 351, and in *People* v. *Coleman,* 251 id. 497, that the Parole law then in force applied to the crime of manslaughter. The Parole law of 1917 is similar in that regard to the law considered in the *Peters* and *Coleman* cases. There was no error in the verdict or sentence.

Plaintiff in error also complains of the giving of a form of verdict for manslaughter on the ground that the crime committed, if a crime at all, was murder and that there was no evidence of manslaughter. We are satisfied, however, on review of the record, that there was evidence in the record by which the jury might, as they did, reduce the crime from murder to manslaughter. The People, therefore, had a right to have such a form of verdict submitted under the evidence in this case.

The giving of instructions is complained of, as is the refusal of certain instructions tendered by the plaintiff in error. We have examined the instructions referred to, and are of the opinion the jury were fully and fairly instructed. Those instructions offered by plaintiff in error and refused by the court which presented correct propositions of law were fully covered by other instructions offered by him.

There appears to be no reversible error in the record. There is no reasonable doubt of the guilt of the plaintiff in error in this case, and it is not contended that such doubt exists. In fact, on this record it is evident that the verdict of the jury was more favorable to him than he had a right to expect.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*

DUNN, C. J., and CARTWRIGHT and DUNCAN, JJ., dissenting.