(No. 14711.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ARTHUR BERNSTEIN, Plaintiff in Error.

*Opinion filed October 21, 1922.*

1. CRIMINAL LAW—*what is sufficient proof of a corporation by user.* In a prosecution for robbery of money belonging to a bank the corporate existence of the bank is sufficiently established by user, where the proof shows that a charter was issued, that the bank was being operated by certain officers and a board of directors, and the vice-president testifies that he attended all the meetings of the board of directors up to the time of the robbery.

2. SAME—*when proof sufficiently establishes ownership of property taken in robbery.* In a prosecution for robbery, proof of the allegation that the defendants took $25,000 from the person and against the will of John F. Amberg, the money being the property of the Schuebert & Amberg State Bank, a corporation, while it was in the care, custody and control of Amberg, is sufficient to show ownership of the money, as the gist of the offense is the force or intimidation used in taking from the person of Amberg, against his will, property belonging to him or in his custody.

3. SAME—*Indeterminate Sentence act is valid.* The Indeterminate Sentence act or Parole law does not violate section 1 of the fourteenth amendment of the Federal constitution or of the constitution of Illinois. (*People* v. *Doras,* 290 Ill. 188, followed.)

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. JOSEPH FITCH, Judge, presiding.

LEWIS A. HAUSCHILD, (THOMAS E. SWANSON, of counsel,) for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and JAMES B. SEARCY, (EDWARD E. WILSON, and CLYDE C. FISHER, of counsel,) for the People.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Plaintiff in error, Arthur Bernstein, with Irving Olson, Leo Glistenson, Joseph Kelly and Pauline Bernstein, otherwise called Ogg, was indicted by the grand jury of Cook county for robbery with a pistol. The indictment charged that on April 21, 1921, in Cook county, Illinois, the defendants by force and violence, as aforesaid, took $25,000 from the person and against the will of John F. Amberg, the money being the property of the Scheubert & Amberg State Bank, a corporation. Plaintiff in error and Kelly were tried together in the criminal court of Cook county on their pleas of not guilty, and plaintiff in error was found guilty of robbery with a gun, as charged in the indictment, and sentenced to the penitentiary. By this writ of error he asks a review of that judgment.

By the first assignment of error it is charged that there was no proof that the Scheubert & Amberg State Bank was a corporation at the time of the robbery. The proof shows that there was a charter issued to the Scheubert & Amberg State Bank by the Secretary of the State of Illinois and that it was functioning as a bank on April 21, 1921, and that it was operated by officers and a board of directors on that date. The officers of the bank consisted of a president and vice-president, whose names were stated in the evidence, and also a cashier, whose name was also given. The bank had a board of eleven directors, and the vice-president testified that he had attended all the meetings of the board of directors up to the time of the robbery. In all criminal

prosecutions involving proof of the legal existence of a corporation, user shall be *prima facie* evidence of such existence. (Crim. Code, par. 486; *People* v. *Kozel,* 303 Ill. 112.) The foregoing proof establishes *prima facie* the existence of the corporation by user, and there is no proof to the contrary against the *prima facie* case thus made. The allegations and proof sufficiently charge and prove ownership of the money in John F. Amberg, who was in possession of the money and from whom the robbers took it by force. Ownership was sufficiently proved in both Amberg and the Scheubert & Amberg State Bank to sustain the charge of robbery, and there is no variance or failure to prove ownership of the money as alleged. The gist of the offense is the force or intimidation used in taking from the person of Amberg, against his will, property belonging to him or in his care for the bank. *People* v. *Rogers,* 303 Ill. 578.

There is no merit in the next contention, that the proof did not show plaintiff in error guilty beyond a reasonable doubt. The proof showed, without contradiction, the following facts: John F. Amberg, vice-president of the bank aforesaid, and Norton F. Stone, cashier, on April 21, 1921, about 8:30 A. M. left the bank with $25,000 in money of the bank, and while they were driving along a public street in the city of Chicago, in Cook county, another automobile crowded their automobile to the sidewalk and several men jumped out of the automobile and pointed revolvers at Amberg and Stone, pushed their hats down over their eyes, forced them into the rear part of the automobile of the bandits, and drove them for a half mile or more on the streets of the city, and while so driving them sat down on their bodies, cursed and abused them and used all manner of vile language, pointed guns in their faces and prevented them from seeing or looking into the faces of any of the bandits. The $25,000 that was in the car driven by Amberg and Stone was under the seat of the car and in the possession of Amberg at the time they were taken from

their automobile, and it disappeared and was never seen by
the bank officials again or by Amberg or Stone.  Amberg
and Stone heard one of the hold-up men remark as they
were leaving the scene of the robbery, "I have got the
money."  Neither Stone nor Amberg was able to identify
any of the robbers on the trial for the reasons aforesaid.

Irving Olson was employed by the Scheubert & Amberg
State Bank about December 27, 1920, and remained there
until April 29, 1921.  He met plaintiff in error, Bernstein,
two nights before the robbery and was acquainted with him.
He and Bernstein played dice together some time after De-
cember 27, 1920.  He met Bernstein on the eleventh floor
of the city hall and had a conversation with him, during
which Bernstein asked for whom he was working, and Ol-
son told him.  Bernstein asked about how much money he
carried as messenger for the bank.  Olson afterwards saw
Bernstein on a North avenue car, in Chicago, when Stone
and Olson were taking some money down to the Union
Trust Bank.  Bernstein called Olson up afterwards and
asked him to meet him at Madison and Wells streets, and
told him that he (Bernstein) and some other fellows were
going to hold up the Scheubert & Amberg State Bank and
that they would give Olson his end of the money.  Olson
testified that he said to Bernstein, "Now, listen; don't get
me into this;" that Bernstein said, "Don't worry; you
just tell us what way they go down and what money they
carry;" that he told Bernstein that he did not know just
the way they went or what money they carried to other
banks; that Bernstein said, "Well, I and some other fel-
lows we will go in a machine and we will stick the machine
up they are in."  Olson told Bernstein that the officials car-
ried the money under the seat.  Bernstein told Olson that
if he got in any trouble he would get him out if it cost
$100,000 but if Olson "squawked" they would bump him
off.  This talk was on April 18 or 19, just before the rob-
bery.  About four days after the robbery Bernstein called

up Olson and told him that he (Bernstein) was going down-
town and that he wanted to see him. Olson met him, got
into an automobile with him and rode some distance, and
then Bernstein told Olson to meet him at a certain place
near Oakley avenue, in Chicago. Olson went there and
Bernstein and Kelly drove up in a car. After going into a
house near the place, Bernstein told Olson that the reason
he called him up was that he wanted to give him some
money; that it was an easy job they pulled; that they
"crowded their machine to the curb and stuck them up and
pulled their hats down over their faces and put them down
in the machine and sat on them." They then drove to the
corner of North avenue and Wells street and Mrs. Bernstein
was waiting on the corner there. After some further driv-
ing around and meeting Mrs. Bernstein on several corners,
Mrs. Bernstein pulled a roll of money out of her pocket
and started to count it. The Bernsteins said they were giv-
ing Olson what they called "two grands," which in their
slang means $2000. Bernstein told Olson to take his money
and put it in the Masonic vaults. Olson took the money,
and when he counted it after leaving the Bernsteins he
found that they had given him $1800.

The foregoing facts are taken almost literally from the
statement of facts in the People's brief in this case as they
are found to be verified by the record. It further appears
from the record that Olson had been jointly indicted with
Bernstein, but testified that he was giving his testimony of
his own free will and that no coercion was used or induce-
ment of any kind given him. Bernstein further told Olson
that the money that he gave him was a part of the money
he had taken in the hold-up. While it does not appear from
the evidence that Bernstein ever said to Olson after the
hold-up that he had held up Amberg and Stone, yet it
clearly appears circumstantially from the facts related by
Amberg and Stone as to how they were held up and treated,
and from the statement of Bernstein to Olson as to how

he and the other robbers made the hold-up and as to how they treated the parties held up by them, and from all his other statements to Olson previous to the hold-up, and by his paying the $1800 to Olson as his part of the money realized out of the hold-up by the robbers, that it was Bernstein and his confederates that held up and robbed Amberg. The statements proved to have been made by Bernstein to Olson and to the officers after Bernstein was arrested amount to a complete confession on his part that he and his confederates committed the robbery in question. Bernstein was arrested in New York some time after the robbery and had $2500 in money in vaults in New York, which he took out under directions from the officers who arrested and brought him back to Chicago. Mrs. Bernstein was also arrested in New York at the same time, and Bernstein asked the officer what his wife had to do with the trouble, and the officer told him that she was indicted for the robbery. Bernstein then said to the officer, "She didn't hold nobody up," and the officer told him that the bank messenger, Olson, stated that she paid him his end of the proceeds of the robbery. Bernstein then replied, "That don't make any difference; that the money came from people who could afford to lose it anyhow." No defense whatever was offered on behalf of Bernstein. The evidence in this record completely satisfies us of his guilt beyond all reasonable doubt.

The court did not err in sentencing plaintiff in error under the Indeterminate Sentence act. This court has frequently decided that the Indeterminate Sentence law does not violate section 1 of the fourteenth amendment of the Federal constitution or the constitution of Illinois. *People* v. *Doras,* 290 Ill. 188; *People* v. *O'Donnell,* 291 id. 178; *People* v. *Prochowski,* 294 id. 482.

The judgment of the criminal court of Cook county is affirmed.

*Judgment affirmed.*