(No. 14882.—Judgment affirmed.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* FRANK NEHRKORN, Plaintiff in Error.

*Opinion filed December 19, 1922.*

1. CRIMINAL LAW—*when judgment of conviction will not be reversed on the facts.* Questions of fact are peculiarly within the province of the jurors, to be passed upon by them, and when the decision in a criminal case depends upon the credibility of witnesses, a judgment of conviction will not be reversed on the facts unless the evidence clearly indicates a reasonable doubt of guilt.

2. SAME—*credibility of testimony of identification is for jury.* The weight to be given to testimony as to the identification of the accused is for the jury to pass upon and decide, and where the testimony as to the material facts is directly in conflict and irreconcilable and a decision depends largely upon the credit to be given to the opposing witnesses, it is peculiarly the province of the jury to determine their credibility.

3. SAME—*Indeterminate Sentence law is valid.* The Indeterminate Sentence law does not violate either the State or Federal constitution. (*People* v. *Doras,* 290 Ill. 188, and *People* v. *Connors,* 291 id. 614, followed.)

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. MICHAEL L. MCKINLEY, Judge, presiding.

EUGENE L. MCGARRY, (THOMAS E. SWANSON, of counsel,) for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and EDWARD C. FITCH, (EDWARD E. WILSON, and CLYDE C. FISHER, of counsel,) for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

Plaintiff in error, Frank Nehrkorn, was convicted in the criminal court of Cook county of the crime of robbery while armed with a revolver and sentenced under the Indetermi-

nate Sentence law to the Joliet penitentiary. The case has been brought here by writ of error.

The testimony in the record is substantially as follows: That about four o'clock in the morning of May 18, 1921, three men drove into the Central Garage, located at 5465-73 West Madison street, in Chicago, in a Packard car and asked for water and gasoline; that this garage was owned by Charles C. Mashek and was then in charge of an employee, John Skrgeg; that as Skrgeg turned to pump the gasoline one of the three men thrust a gun against his back and told him to turn around; that when he turned around he was walked back by this man to the toilet and held there about fifteen minutes by this man while the other two men went back to the office; that while he was being so held he was facing the alleged burglar, who he testified at the trial was plaintiff in error, Nehrkorn; that plaintiff in error held the revolver pointed at witness' stomach and asked him if his boss had any money, to which he replied he didn't know, because he had only worked there one week; that thereupon plaintiff in error called to one of his confederates to bring a rope or wire, and failing to find any they took a chain off an automobile and tied Skrgeg's hands behind his back and then fastened his feet with a telephone wire. The record shows that plaintiff in error's two companions had been loading another Packard car which was kept at the Central Garage and was the property of Nathan Manilow, with tires taken from the garage. Manilow identified the car later as his and testified that he kept it in the garage.

The proprietor of the garage, Mashek, testified that he was called on the telephone at five o'clock and went to the garage; that he found a lot of his merchandise missing, including six tires, a battery and a spark-plug tester; that he found and identified this property later at the detective bureau.

Joseph E. Hesser testified that he was the proprietor of a garage at 1238 Morse avenue, and that on May 18, 1921,

plaintiff in error was in his employ as floorman and fore-
man of the washers at night. Hesser was shown a revolver,
which he identified as being like the one he had in his desk,
of the same make and caliber. He stated that he did not
miss the revolver until the police officers came and asked him
for it, and upon opening the drawer found it was missing.

Officer William O'Malley testified that he arrested plain-
tiff in error, John Walsh and four other men at the Argyle
Garage, 5057 Broadway, on May 19, 1921, at two o'clock
A. M.; that he and officer O'Neill saw some cars driving
back and forth in front of the garage, and as they went in-
side six men, including plaintiff in error, came up from the
rear; that all six men were placed under arrest, and as they
walked toward the officers plaintiff in error passed in be-
tween two cars, and afterwards O'Neill walked in between
the same cars and there found a nickel-plated revolver; that
after O'Malley had asked what the men were doing in the
garage and received their answer, he told them he did not
believe them; that he then started down the line of auto-
mobiles and took the number of each car while O'Neill
guarded the six men; that by consulting a list he had with
him he found the Packard was a stolen car and so informed
the men placed under arrest. The record further shows that
O'Malley took Walsh, who was jointly indicted with plain-
tiff in error, in a room there, and found tires, spark plugs,
a spark-plug tester, a battery, and seat covers from Mani-
low's Packard car, covered over with a blanket; that there-
upon he notified the auto squad at the detective bureau and
then called up Manilow, who came over and identified his
car; that the officers recovered the car and accessories, and
took them, together with the six men, to the Hudson ave-
nue police station; that then O'Malley telephoned Skrgeg
and he immediately came to the police station, and on seeing
plaintiff in error identified him as the man who held him
up with a revolver; that the police officers then went to the
home of Walsh and John Blank, two of the men indicted,

and found tools and blankets belonging to the Packard car; that the officers hunted for Blank but could not find him, and the record shows he was not found during the trial of this case. O'Malley further testified that he had a conversation with plaintiff in error on Sunday night, May 23, and that he told O'Malley of the burglary and his part therein, and said the reason he had pulled this job was that his wife had left him and he wanted to get enough money to get her back and treat her right; that when asked to reduce his talk to writing he refused; that he asked Nehrkorn where he got the revolver, and he said it belonged to Hesser, at the Morse avenue garage; that the Packard car, which had a green body, had been left there by a man he did not know, to be sold, and he took it out; that at one time when he had this green car out he had been chased by the Summerdale police, but as the police had a Ford car they could not catch him in the Packard; that he drove this Packard car and Walsh drove Manilow's Packard car when they left the Central Garage; that plaintiff in error admitted holding up Skrgeg at the Central Garage and that he called Blank to get the telephone wire to tie Skrgeg up, which Blank did; that they put him in the toilet and the other two men loaded the car; that he laughed when he was putting him in the toilet; that Walsh was to do the job but got cold feet; that Nehrkorn went to the Packard car and got the revolver and put it on the watchman.

Officer O'Neill testified substantially as did officer O'Malley. He also identified the 32-caliber Smith & Wesson revolver that Nehrkorn dropped between the two cars in the garage, stating that he marked the revolver with a finger-nail file and also numbered it, and that he identified it by said marks. This officer also testified, on cross-examination, that he talked with Nehrkorn about the revolver, and that Nehrkorn stated he got it out of a drawer at the Morse avenue garage; that at the time the officer picked

the revolver from the floor of the garage he asked Nehrkorn if it was his revolver, and he replied, no.

John Walsh, called as a witness by the court, testified that he was the same Walsh who was jointly indicted with Nehrkorn and Blank and that he had entered a plea of guilty in this case. He admitted taking part in the robbery but denied that Nehrkorn took any part in it whatsoever. He stated positively that Harry Jarvis was the party who held the revolver to Skrgeg and was also the man who walked Skrgeg into the toilet and locked him up there; that he (Walsh) and Blank were the ones who took the tires, spark plugs and some stuff out of the garage. The record also shows that Walsh testified that he asked Jarvis where he got the revolver, and he said Nehrkorn took it out of the desk at the Morse avenue garage. On cross-examination Walsh admitted that when he made this statement to the police he told them that Nehrkorn was with him at the time; that he made that statement to the police in order to give the other fellows a chance to get away. This witness also testified that he put the revolver behind the car before the officers came into the garage, instead of Nehrkorn; that he went out to the garage where Nehrkorn was working at about 1:30 A. M.

Adolph Nehrkorn, a brother of plaintiff in error, testified that on May 18, at four o'clock A. M., he saw his brother in the Morse avenue garage, in Rogers Park; that witness and others had been celebrating an anniversary at his home on Merrimac avenue, near Montrose, and some of the guests lived on Ridge avenue, in Evanston; that when the party was over, about 2:00 or 2:30 A. M., some members of the party said they wanted to go home, and witness took five of the people in his machine, among others a priest, Father Joschko, to Ridge avenue, about a mile the other side of Howard avenue; that he found his car needed gas, and as his brother, Frank, was located in that vicinity he drove

to Hesser's garage, reaching there about four A. M., and found plaintiff in error and asked him for some gasoline.

Father Joschko testified he is a priest and lived in Jefferson, not far from the Nehrkorn family; that after the party just referred to he went for a ride with Adolph Nehrkorn, a brother of plaintiff in error; that Adolph was going to take a number of people home and witness went with him for a ride; that he saw plaintiff in error between three and four o'clock in the morning of May 18; that he remembered his party took gasoline for the machine there and then went home.

Plaintiff in error testified in his own behalf that he was employed by Joseph E. Hesser, doing washing and simonizing cars and had several men working under him; that he also worked at the Argyle Garage, at 5057 Broadway; that he was acquainted with John Walsh, who was the night man at the Argyle Garage, which was about a ten-minute ride from Hesser's garage; that on the night of May 17 and morning of May 18, with the exception of about half an hour, starting about 12:45, for lunch, he stayed at the garage until Hesser came to relieve him at 7:30 in the morning of May 18; that he did not have anything to do with the robbery of the Central Garage, on West Madison street; that when he was arrested he was taken to the squad room at the police station. He then testified: "Skrgeg pointed to me and said that I held him up, and I said to him, 'You are mistaken; I never saw you before; you had better take a good look at me.' He looked at me and said that I was the fellow, and I said he was making a mistake, and Mr. O'Malley said, 'Why don't you tell the truth? You held him up, didn't you?' and I said, 'No, I never saw this man in my life before.'" He further testified that on May 19, about two A. M., Walsh telephoned him that there was a car to be washed over at the Argyle Garage; that he told Walsh to call for him and he would go over; that Walsh came over in a car and witness rode with him to the Argyle

Garage and had just gotten out and walked into the garage when he was arrested; that he told the police officer he had just come in to wash a car and showed him his card; that the police officers found the stolen property and arrested him, together with five other persons who were in the garage at that time. He denied telling the police officers that he took any part in the robbery.

Counsel for the plaintiff in error argue at considerable length that this case should be reversed because the conviction is based upon unsatisfactory evidence, which leaves such grave and serious doubt of plaintiff in error's guilt as leads to the conclusion that the verdict of the jury was the result of passion or prejudice. We cannot agree that the evidence is of such a nature. The questions raised are purely questions of fact, and we have said repeatedly for years that questions of fact are peculiarly within the province of the jury, to be passed on by them, and that when the law has committed to the jury the determination of questions of fact, and where the decision in a criminal case depends upon the credibility of witnesses, a judgment of conviction will not be reversed on the facts unless the evidence clearly indicates a reasonable doubt of guilt. *People* v. *Stephens,* 297 Ill. 91.

It is strenuously insisted by counsel for plaintiff in error that his identification by Skrgeg is not sufficient to justify his conviction. There can be no doubt as to Skrgeg identifying plaintiff in error as the man who held him up in the garage and kept him imprisoned in the toilet for some fifteen minutes, with a revolver pointed at him, thus giving him a very good opportunity to observe the robber's appearance. The weight to be given to the question of the identification of the accused is one for the jury to pass upon and decide, and we think, under the reasoning of this court in *People* v. *Jennings,* 252 Ill. 534, and *People* v. *Maciejewski,* 294 id. 390, this court is bound by the evidence in the record to abide by the jury's decision on that point. The most

important and useful function which the jury is required to perform is to determine on which side of a controversy the real truth lies where the testimony as to the material facts is directly in conflict and irreconcilable, and their conclusion in such case of necessity depends largely upon the credit to be given to the opposing witnesses, hence it is universally admitted to be the peculiar province of the jury to determine the credibility of the witnesses. (*People* v. *Maciejewski, supra.*) And this is especially true in this case on the question of alibi. The principal testimony by the most reliable witness on that point was that of Father Joschko. He testified that while taking a ride with plaintiff in error's brother and other persons he saw plaintiff in error in the garage in Rogers Park between three and four o'clock in the morning. If he saw him about three o'clock that would allow an hour for the Packard car to travel the distance between Hesser's garage in Rogers Park and the Central Garage on the west side of Chicago, which with a high-power car and streets almost deserted would seem to be a comparatively easy matter. The testimony of other alibi witnesses, like that of John Walsh, who was indicted with plaintiff in error and plead guilty and testified that he was night manager of the Argyle Garage where the stolen Packard was taken, with reference to his former stories as to the guilt of plaintiff in error and as to the guilt of Harry Jarvis, is not of a reasonable character, and there can be no question on this record that the jury were justified in finding plaintiff in error guilty notwithstanding the evidence as to an alibi introduced in his behalf on the trial.

It is also objected that the motion in arrest of judgment should have been allowed because the jury did not fix the term of imprisonment in the verdict, and that the trial court erred in imposing an indeterminate sentence under the Indeterminate Sentence law, thus violating both the Federal and State constitutions. This question has been so frequently passed upon adversely to the argument of counsel

for plaintiff in error that it is unnecessary to discuss or consider it.  *People* v. *Doras,* 290 Ill. 188; *People* v. *Connors,* 291 id. 614.

We find no error in the record.  The judgment of the criminal court of Cook county will therefore be affirmed.

*Judgment affirmed.*