(No. 28339.—▮▮▮▮▮▮▮▮▮▮▮▮)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WILLIAM J. ROCHE *et al.*, Plaintiffs in Error.

*Opinion filed January 17, 1945—Rehearing denied March 19, 1945.*

Wm. Scott Stewart, of Chicago, for plaintiffs in error.

George F. Barrett, Attorney General, and Thomas J. Courtney, State's Attorney, of Chicago, (Edward E. Wilson, John T. Gallagher, Melvin S. Rembe, and Joseph A. Pope, all of Chicago, of counsel,) for the People.

Mr. Justice Thompson delivered the opinion of the court:

William J. Roche, otherwise called William Murphy, Raymond Fishell, otherwise called Raymond Peter Fishell, otherwise called Robert Ross, otherwise called Edward Doyle, Wincel Urban, otherwise called John Roland, and one William C. Walker, hereinafter referred to as defendants, were indicted in the criminal court of Cook county for robbery. All defendants entered pleas of not guilty, and on motion of the State's Attorney a separate trial was granted to the defendant William C. Walker, who was released upon his own recognizance. The three remaining defendants were tried before a jury, and, after motion for a directed verdict at the close of all the evidence as to each defendant, which was overruled, the jury returned verdicts finding them all guilty. Defendant William J. Roche was found guilty of robbery and the court fixed his punishment at imprisonment in the penitentiary for a term of not less than one year nor more than three years. Defendant Raymond Fishell was found guilty of robbery and of having been theretofore convicted of a felony, and the court fixed his punishment at imprisonment in the penitentiary for a term of twenty years. Defendant Wincel Urban was found guilty of robbery, and the court fixed the duration of his imprisonment in the penitentiary at not less than

eight years nor more than fifteen years as provided by law. A *nolle prosequi* as to William C. Walker, who testified in the trial of this cause and who had been granted a separate trial, was entered on motion of the State's Attorney. Defendants bring the cause here contending the State's Attorney asked improper questions of a certain witness in cross-examination, that improper instructions were given to the jury, and that the judgments entered are void because the amendment to the Parole Act rendered that act unconstitutional.

The evidence reveals the following facts pertaining to this robbery: The Olson Transportation Company is located at 2222 South Western avenue, in the city of Chicago, and one Margaret Applegate was employed there as cashier, taking in the cash as turned in by incoming drivers employed by the company. On March 6, 1944, around 9:45 o'clock in the morning, while she was on duty, a man came in, stood along side of her and said, "This is a stick-up, don't say anything or you will get hurt." His right hand was in his pocket and with his left he closed the cash-box drawer which contained the money she had placed there that had been brought in by drivers, picked it up, put it under his arm and walked away. He had on a tan camel-hair overcoat and wore a crushed fedora hat. As he walked away, the cashier turned in her chair and observed another man standing by the gate holding it open for the man to go through with the cashbox. After both of these men left, the cashier saw the conveyance they used. It was a black Ford sedan standing at the curb, and the men entered this car and drove east on Twenty-second place, Twenty-second place being about twenty feet south of the entrance to the building.

Mrs. Applegate was called as a witness for the People and positively identified defendants Fishell and Roche as being the parties who were in the Olson Transportation Company building and who walked out with the money

on the day in question. She also testified that later, on the morning of the robbery, she was called to the Brighton Park police station and saw defendant Fishell, who was in custody and whom she identified at that time. She also saw the Ford car which she stated resembled the car used by the men in leaving the scene of the robbery. She testified that approximately $650 was taken, which was the property of the Olson Transportation Company.

Thaddeus Michalek, a driver for the Olson Transportation Company, testified he was in the building at the time of the robbery and saw a man come up to Mrs. Applegate, pick up the cashbox, put it under his arm and walk away; that the man who picked up the cashbox was defendant Fishell and that another man, standing at the door coming into the building, opened it for him and they both went out; that he ran after the men and saw them get in a black Ford car and leave; that about a half-hour or an hour later he went to Brighton Park police station and recognized Fishell, who was in custody, as the man he had seen pick up the cashbox.

Other employees of the transportation company, who were present at the time of the robbery, identified Fishell and testified they observed him and his confederate escape with the cashbox in the Ford automobile in which they were riding.

Edward Bartel, a salesman, testified that on March 6, 1944, about 9:40 or 9:45 A. M., he was on his way out of Chicago, traveling north on Western avenue; that as he approached the Olson Transportation Company building, he saw two men run out, (one wearing a light tan overcoat,) and jump in a car, and saw a few people following them; that as his automobile reached a point about even with their car in the intersection of Twenty-second place and Western avenue, their car swung to the left and almost ran into the side of his automobile; that he was able to see the driver of the car, whom he later identified

at the police station as Wincel Urban; 'that he followed the black Ford automobile down Twenty-second place to Oakley boulevard; that, following them, he observed the license number of the car which was Illinois 335914; that, shortly thereafter, the car slowed down and a man jumped out and got into a two-toned Buick with a Missouri license on it; that this man had on a tan coat; that the Buick pulled out from the curb immediately after he entered and went down Oakley boulevard to Twenty-fifth street; that he followed and took the license number of the Buick car which was 178292; that the Buick car was a five-passenger coupe with a two-toned color, gray with a maroon body; that he immediately called the police, giving them that license number, and went back to the Olson Transportation Company and inquired if they had a robbery there; that he went over to the Brighton Park police station around 11:30 A. M. and saw the two cars that he had previously followed; that they bore the same license numbers he had noted earlier that morning and that he recognized two prisoners then in custody as being the two men, Urban and Fishell, he had seen earlier that morning. He further testified there were three men in the car at the Olson Transportation Company, that is, after the two men ran and got in just before the car pulled away.

Police officers testified as to complaints coming into the police department concerning the two cars in question being used in the robbery; that teletype notice from the department was immediately given with the numbers'of the cars; that members of the department, while cruising around in the neighborhood of Western avenue, saw a Buick sedan, a two-toned color, bearing license number 178292, parked near a saloon; that they entered the saloon and saw two men at the bar drinking; that they made inquiries of them and noticed there were some automobile keys lying in front of them. After questioning these men, who said they came there on the streetcar, they took them in custody and went

out to the two-toned Buick and found that one set of the keys fit the car. They also found on each of these parties a key for a room at the Linwood Hotel. One of the keys had the number 105 and the other 106. They arrested the defendants, who proved to be Fishell and Urban. They also found the black Ford car bearing license number 335914 and that the other set of keys, which were in front of Urban at the bar, fit the ignition of this car. They searched this car and found a paper bag under the seat with two fully loaded revolvers. The officers then went immediately to the Linwood Hotel and searched rooms 105 and 106. They found a woman in one of the rooms who said her name was Walker and she was taken into custody. They talked to the hotel clerk and showed him the keys and he looked up the record. Room 105 was issued to a man by the name of Walker and room 106 to a man by the name of Moore. It was shown by the clerk of the hotel that the men who registered there, taking these rooms under assumed names, were defendants Fishell and Roche.

William C. Walker, who was indicted along with the other defendants but who was given a separate trial, testified for the People and gave complete details as to the arrangements for robbing the transportation company and the method and manner in which it was to be carried out, implicating and identifying the three defendants. He did not participate in the actual carrying out of the crime but had tipped the defendants off to the location where they might make some money on robbery. His first appearance, in his connection with the robbery, was when he called at the Linwood Hotel the next morning to collect, as he said, "his money as a tipster." When he went to room 105 he found the officers there who arrested him. He was immediately taken to the detective bureau, questioned as to his participation, wherein he made and signed a statement, giving full details. In fact, the testimony of Walker was

so largely corroborated that the defendants do not even attack his evidence. Without further going into detail, it is safe to say the evidence was so overwhelmingly against defendants that there could be no question as to their guilt.

The defendants, however, contend their rights were unduly prejudiced because of the misconduct of the prosecutor in asking a witness if he had been in the penitentiary. The controversy arose when one Robert Hughes, who resided in St. Louis, was called as a witness in behalf of the defendant William Roche. His testimony was to the effect that he had known William Roche for about twenty years, talked to him on March 6, 1944, at the Fairgrounds Hotel in St. Louis about eight o'clock in the evening, this evidence being offered for the purpose of showing that defendant Roche was not present in the city of Chicago and could not, therefore, have participated in the robbery. On his cross-examination he was asked, "Have you ever been in the penitentiary?" An objection and a motion to withdraw a juror were made, which were overruled by the court. The witness was again asked, "Have you been in the penitentiary?" and he answered, "No Sir." Motion was again made to withdraw a juror, which was overruled.

It is urged by counsel for defendants that this was prejudicial error and the court should have withdrawn a juror when requested, and numerous cases have been cited in support of this contention. The case of People v. Faught, 343 Ill. 312, is cited. There, the question arose when a witness for Smith, a defendant in a capital case, was cross-examined as to the general reputation of Smith for being a peaceable citizen. The assistant State's Attorney asked the witness, "Did anybody ever tell you he [referring to Smith] was in the Michigan penitentiary?" This question was held to be improper and the court not only sustained an objection but directed the jury to disregard the question. The court there said the manifest purpose of the question asked on cross-examination was

to create a prejudice in the minds of the jurors against Smith, who was the defendant. The possible effect of the question in that case can easily be distinguished from the case before us.

In the case of *McKevitt v. People*, 208 Ill. 460, cited by plaintiffs in error, the People, on cross-examination of a witness for the defendant, were permitted by the court (over defendant's objection that this was not the best evidence,) to show that the witness had been convicted and sent to the penitentiary for robbery. When the witness testified on the part of the defendant, the assistant State's Attorney was permitted to show on his cross-examination that he had been imprisoned in the penitentiary at Joliet, for robbery. The court there held that while it was proper to show that a witness was convicted of an infamous crime, for the purpose of affecting his credibility, it must be done by the introduction of the record of the conviction, citing the case of *Bartholomew v. People*, 104 Ill. 601, as authority. This, apparently, was the first case where the rule was applied to a witness other than the defendant himself and, in support thereof, the *Bartholomew case* was cited, although this case presented similar questions asked there of the defendant.

This court has recently, however, adopted the view, in the case of *People v. Halkens*, 386 Ill. 167, that the same reasons do not exist for applying the rule to a witness in a criminal case that would be proper to apply to the defendant himself. There, at page 178, this court said:

"A witness, not a defendant, however, is in a different position. In the first place it cannot affect anything except his credibility, because, not being on trial, neither the jury nor the court can use it in administering punishment. Also, it will not subject him to the same hazards to which a defendant is subject in being before the court as a criminal. And finally, the State in many cases, being unaware of whom the defendant may call as witnesses, may be left at

a disadvantage in being unable to ascertain whether the credibility of the witness is liable to be impeached by a previous conviction.

"None of these matters were touched upon in the original *Bartholomew case,* and since the defendant in that case was the one who was cross-examined, and the offense sought to be proved was not infamous, it is doubtful if the court gave consideration to the effect of the statute upon witnesses not a defendant himself. We are inclined to the view that what we have previously said concerning proof of the former conviction of a defendant is undoubtedly sound, and should be followed and adhered to. On the other hand, although the *Bartholomew case* was cited as authority in the three cases, where the rule is applied to witnesses, it is done so only by way of declaration and without the citation of authority, and we believe was inadvertently said.

"None of the effects of infamy at common law applies to a witness not a defendant, because the whole effect of the sentence in the prior conviction is fixed by the statute and may be removed by pardon. (Ill. Rev. Stat. 1943, chap. 38, par. 587.) It must, however, be remembered that, even though not a defendant, the witness can be made to testify only to former convictions involving infamous crimes, and cannot be interrogated on arrests or indictments, or upon convictions of crimes not infamous, as the credibility of a witness is not presumed to be affected by anything less than the conviction of an infamous crime."

If it could be said, in the instant case, that the cross-examination was only a suggestion by way of questions merely for the purpose of throwing suspicion upon the credibility of the witness, it might be held reversible error. Upon this record such is not the case.

It is contended by counsel for defendants that the court erred in giving to the jury upon its own motion, a general instruction upon a question of alibi. In the case of *People*

v. *Grizzel,* 382 Ill. 11, we held a general instruction, purporting to state the general rule as to proof of an alibi, was applicable to all defendants although specific instructions as to each had been tendered, and, while the better way in this case would have been to direct the alibi instructions to those defendants so offering proof in that regard, we do not see how it could be prejudicial to those not offering such proof, in view of the overwhelming weight of the evidence connecting them with the case. Defendants' contention cannot be sustained.

It is urged by the defendants that the Sentence and Parole Act of 1917 was amended in 1941 to provide for an advisory recommendation; that this was held to be void in the case of *People* v. *Montana,* 380 Ill. 596, and that the amendment enacted since that case was decided is also void because, in passing the last amendment to the Parole Act, the legislature went beyond its powers, resulting in the law becoming unconstitutional, and further, that the amendment invalidates the entire Parole Act. The Parole Act operates the same as formerly except within the limits of punishment as fixed by the court in its judicial discretion. The question of the constitutionality of the Parole Act has been before this court on many occasions and it has repeatedly been held constitutional. In the *Montana case,* while certain amendments were held to be unconstitutional and void, the Sentence and Parole Act, as it existed prior to those amendments, was held to be valid and afforded the only guide to be followed in sentencing prisoners convicted of crime. Not only was the Parole Act held to be valid in that case but it was held valid in the prior cases of *People* v. *Mikula,* 357 Ill. 481, *People* v. *Dwyer,* 324 Ill. 363, *People* v. *Cohen,* 307 Ill. 87, *People* v. *Bernstein,* 304 Ill. 351, and *People* v. *Doras,* 290 Ill. 188. We see nothing to be gained by reviewing questions disposed of in numerous cases decided by this court.

The 1943 amendment as questioned pertains to sections 2 and 3 of the Sentence and Parole Act. (Ill. Rev.

Stat. 1943, chap. 38, pars. 802, 803.) Section 2, in so far as it is necessary to the question here, is as follows: "Except for the crimes enumerated in section one of this Act, the courts of this State, in imposing a sentence to the penitentiary or to the reformatory for women or to any other State institution now or hereafter provided by law for the incarceration, punishment, discipline, training or reformation of persons convicted and sentenced to, or committed to such institutions (not including, however, county jail,) shall fix the minimum and maximum limits or duration of imprisonment. The minimum limit fixed by the court may be greater but shall not be less than the minimum term provided by law for the offense and the maximum limit . fixed by the court may be less but shall not be greater than the maximum term provided by law therefor. For the purpose of determining the minimum and maximum limits or duration of imprisonment, the court may, after conviction of the person, consider the evidence, if any, received upon the trial, and the evidence, if any, as to aggravation and mitigation of the offense, received on a plea of guilty, and may also hear and receive evidence as to the moral character, life, family, occupation, and criminal record, if any, of such person so convicted."

Section 3 provides in part: "Except for the crimes enumerated in section one of this Act, every person, male or female, over ten years of age, who shall be adjudged guilty of felony, or other crime punishable by imprisonment in the penitentiary, or by imprisonment either in the penitentiary or. jail, and as to whom the court shall not have assessed the jail sentence, shall in all cases, except as herein otherwise provided in clauses one and two, be sentenced to the penitentiary, and the court imposing sentence shall fix the minimum and maximum limits or duration of imprisonment. The minimum limit fixed by the court may be greater but shall not be less than the minimum term provided by law for the offense and the maximum limit fixed by the court may be less but shall not be greater

than the maximum term provided by law therefor. For the purpose of determining the minimum and maximum limits or duration of imprisonment, the court may, after the conviction of the person, consider the evidence, if any, received upon the trial, and the evidence, if any, as to aggravation and mitigation of the offense, received on a plea of guilty, and may also hear and receive evidence as to the moral character, life, family, occupation, and criminal record, if any, of such person so convicted."

It will be observed the minimum limit to be fixed by the court may be greater but shall not be less than the minimum term provided by law for the offense, and the maximum limit fixed by the court may be less but shall not be greater than the maximum term provided by law therefor. The court may fix the limits as the minimum and maximum as provided by law, or, in its discretion, fix the sentence of a minimum and maximum within such limits. This discretion has been given to the court by the legislature. It certainly cannot be said that this discretion, placed in the court, could result in any violation of the requirement, long held by this court, that a judgment and sentence must be definite and certain. In the case of *People* v. *Mikula,* 357 Ill. 481, where there was a minimum and maximum sentence provided by law, the sentence, though general, was held to be for the maximum. Under the same reasoning, the minimum and maximum, as fixed by the court, is for a maximum within the maximum fixed by statute and the judgment and sentence is definite and certain. All judgments must be specific and certain and must determine the rights recovered or the penalties imposed. They must be such as the defendant can readily understand and be capable of performing. (*People ex rel. Hinckley* v. *Pirfenbrink,* 96 Ill. 68.) The punishment, as fixed by the court, is within the limits as fixed by the legislature. It has been held by this court that an act of the legislature fixing the limits or punishment to be imposed and empowering the court or jury to fix punishment within

those limits, is valid. (*People* v. *Colegrove,* 354 Ill. 164; *People* v. *Elliott,* 272 Ill. 592; *Andreas* v. *Clark,* 71 Fed. 2d 908, *certiorari* denied, 55 S. Ct. 111, 293 U. S. 555, 79 L. ed. 657.) The amendments in this respect are valid.

Defendants contend no act shall embrace more than one subject and that shall be expressed in the title, and in that respect the amendment violates section 13 of article IV of the constitution. They make no point other than the statement, and cite no authority. The rule is, that when the title fairly indicates the general subject and reasonably covers all the provisions of the act, so as not to mislead the General Assembly or the public, it is a sufficient compliance with section 13 of article IV of the constitution. (*People* v. *Colegrove,* 354 Ill. 164; *People* v. *Tallmadge,* 328 Ill. 210; *People* v. *Jabine,* 324 Ill. 55; *People* v. *Stacker,* 322 Ill. 232; *State of Illinois* v. *Milauskas,* 318 Ill. 198.) Here, the title fairly indicates the general subject and the entire law pertains to the question of punishment of criminals. The amendment does not violate section 13 of article IV of the constitution.

Counsel for defendants urge that if the new amendment and the Habitual Criminal Act are to be applied together the court failed to do so and should have fixed a minimum, and that the judgment as to defendant Fishell is incorrect. It is suggested by counsel that the Habitual Criminal Act has, by this amendment, been repealed. Fishell was sentenced to the penitentiary for a term of twenty years under the Habitual Criminal Act. The Habitual Criminal Act is complete in itself in providing penalties to be imposed. It fixes an increased punishment as an independent statute fixing punishment for a repetition of crime. (*People* v. *Cohen,* 366 Ill. 190.) Defendants' contention cannot, therefore, be sustained.

The defendants having been legally convicted and sentenced under a valid law, the judgments of the criminal court of Cook county are affirmed.

*Judgments affirmed.*