People of State of Illinois, Defendant in Error, v. Ival A. Mainard, Plaintiff in Error.

Gen. No. 10,603.

Opinion filed September 9, 1952. Released for publication October 7, 1952.

DAVID H. CAPLOW, of Chicago, and CARBARY & CARBARY, of Elgin, for plaintiff in error.

John C. Friedland, State's Attorney, and James A. Powers, Assistant State's Attorney, both of Elgin, for defendant in error.

Mr. Justice Anderson delivered the opinion of the court.

Plaintiff in error, Ival A. Mainard, hereafter referred to as the defendant was tried in the circuit court of Kane county on an indictment consisting of three counts, charging him with violation of section 24 of the Medical Practice Act (Ill. Rev. Stat., chap. 91, par. 16i) [1951; Jones Ill. Stats. Ann. 79.25]. He was found guilty, by a jury, of violating each count of the indictment. The jury fixed his punishment by fine of $400 and one year in jail on count one, a fine of $100 on count two, and a fine of $300 on count three. Motions for a new trial and in arrest of judgment being denied by the trial court, judgments were entered on the verdicts and the defendant, to review the proceedings, sues out this writ of error.

Count one of the indictment charges a violation of that portion of the Medical Practice Act which in substance provides that if any person shall diagnosticate, profess to heal, prescribe for, or otherwise treat any ailment or supposed ailment of another without procuring a license, he shall be subject to penalty.

Count two charges a violation of the same Act and is based on a portion of the same statute which provides in substance that if any person shall attach to his name the title Dr., physician, surgeon, M.D., or any other word or abbreviation indicating that he is engaged in the treatment of human ailments as a business, he shall be subject to a penalty.

Count three charges violation of another portion of the same statute which provides that if any person prescribes treatment for the relief or cure of any ailment of any person with the intention of receiving a fee for

the same without first procuring a license, he shall be subject to a penalty.

The statute further provides that any person violating the statute shall be fined on conviction not more than $500 or confined in the county jail not more than one year in the discretion of the court.

Defendant first contends that the verdicts of the jury were manifestly against the weight of the evidence and contrary to the law. The guilt or innocence of the defendant depends largely upon his own testimony and that of Claude C. Martin, prosecuting witness.

Claude C. Martin, investigator for the department of registration of the State of Illinois, testified that on January 5, 1951, he made an investigation to determine whether or not defendant was practicing medicine without a license; that he went to the office of the defendant on the date above mentioned in the city of Elgin, Illinois, and observed a sign on the building which read "Ival A. Mainard, D.N."; that he went into the office and said to the defendant that he was looking for Dr. Mainard; that he said, "Are you him?"; that defendant replied, "Yes." Martin further testified that he told defendant that he was Cris Jensen and he wanted to get a treatment; that he told defendant that he had trouble sleeping and his legs were nervous; that he asked the defendant if he could help him and he answered, "I think so." Martin testified that in the defendant's office there was a machine about four feet long and two and one-half feet wide with insulated wire coming from it to a plate about two and one-half inches wide; that the machine had printed on it the words "Diagnostic" and "Menograph"; that the defendant worked buttons on the machine while putting the plate on the back of Martin's neck; that defendant then took his blood pressure with another machine; that he tested his heart; that he placed various pencil marks on his back and told him he marked

them so that he could give him a treatment; that he manipulated his vertebrae and hips with his fingers on the marked places. Martin testified that after this defendant said the cost of the treatment was $3; that he asked defendant if vitamin pills would help him and the defendant said he thought they would and asked if Martin wanted to buy a bottle for $3.50. Martin testified that he paid the $3 and said he would send the $3.50 for the vitamin pills and this he did. Martin said that this was the only time he was in the defendant's office and that the defendant told him at that time that his trouble was poor circulation in his legs.

The defendant testified that he was a Naprapath Physical Educator; that this consisted in teaching people to exercise properly, to breathe properly, to eat properly, and to watch matters that interfere with habits of sleeping and relaxation. Defendant said that Martin came to his office on the day in question and asked him if he was a Naprapath and he said he was; that Martin asked him whether or not he was Dr. Mainard and he replied, ''My name is Mainard. What can I do for you?'' Defendant further testified that Martin told him that he had trouble with his legs; that defendant told him that all he could do was to give him a non-medical treatment; that he would not offer medical service; that no one else was present but Martin and himself; that he permitted him to take an exercise which consisted in the main of Martin's lifting his legs in the air and letting them down gradually; that he then proceeded to use electric current from the machine above mentioned in the same manner as Martin testified; that the purpose of the machine test was to determine if the organs of the body were functioning normally; that he then checked Martin's heart to determine whether or not it was going too fast or too slow and told Martin that from the examination of his heart he determined that he could take the exercises he might

57

give him; that Martin then took the exercises as above mentioned; that the purpose of the exercises was to relax the patient, to relax the muscles and stimulate lazy muscles; that he told Martin how to take the same type of exercises at home. Defendant admitted that he gave Martin what he called passive exercise by manipulating his hands upon the body of Martin in the manner described by Martin; that he then discussed with Martin the proper food to eat and Martin asked him if there was any vitamin he could take to help build up his diet; that he told him he would sell him a package of food that was rich in vitamin B but he wasn't selling it to correct any disease but for the purpose of balancing his diet and giving him better nutrition; that he further testified that he told Martin his charge for the exercise was $3 and the price of the "food in the package," the vitamin pills, was $3.50; that he received $6.50 from Martin. Defendant admitted that he did not have a license.

█ The purpose of the Medical Practice Act is to regulate the treatment of human ailments for the better protection of public health. It is designed to require all persons treating people afflicted with disease to have a license, so that the public may be protected against the practice of treatment by inexperienced and unqualified persons. (*People v. Reuter,* 320 Ill. App. 600.) The defendant claims that what he did did not violate the statute, and therefore he was not required to have a license.

██ The testimony of Claude Martin and to some extent the testimony of the defendant established the guilt of the defendant in that he did prescribe for and treat the supposed ailment of Martin without procuring a license. The testimony was established without question that he prescribed treatment of the supposed ailment of Martin and received a fee for the same. The credibility of the testimony of the witnesses was for

the jury to determine. We believe that the jury was justified in finding the defendant guilty on counts one and three of the indictment and that the guilt of the defendant was established beyond a reasonable doubt.

 We do not believe that the evidence is sufficient to justify conviction as to count two of the indictment. This count charged the defendant with purporting to be a doctor by attaching to his name the title Dr., physician, surgeon, M.D., or other word or abbreviation indicating that he was engaged in the treatment of human ailments as a business. The only testimony to sustain this charge is that his office sign had on it "Ival A. Mainard, D.N." We do not believe that the use of the letters "D.N." after his name would lead the public to believe that he was engaged in the treatment of human ailments. We do not believe the letters "D.N." should be construed to be synonymous with "Dr., physician, M.D., or other words or abbreviations indicating that he was engaged in the treatment of human ailments."

 The defendant contends that the court refused to admit testimony as to the nature of the science of naprapathy which is not in fact the practice of medicine. The court was correct in refusing to admit this testimony as it was wholly incompetent and immaterial. The question for the jury was whether or not the defendant had violated the statute and not what naprapathy was. There is no merit to this contention of the defendant.

 Defendant urges as error that the trial court refused to give two instructions with reference to his theory of the case. The instructions are not good and were properly refused. The first instruction tells the jury in substance that if the defendant was engaged in massage treatments without infringement on the field of medicine as contained in the Medical Practice Act, they should find him not guilty. The second instruction

59

tells the jury that if the defendant was engaged in physical education and did not infringe upon the field of medicine as defined in the Medical Practice Act that they should find him not guilty. Neither of these instructions is clear nor accurate and the court properly refused to give them. (*People v. Reuter,* 320 Ill. App. 600.)

■ ■ If it had been error to refuse these instructions, such error would not be considered by this court. Supreme Court Rule 38 requires all instructions to be abstracted. In the instant case the only two instructions abstracted are those above mentioned. Where the defendant urges as error that the court refused to give certain instructions tendered by him and the defendant failed to abstract the other instructions given and refused, such alleged error will not be considered here. (*Binger v. Baker* (2d Dist.), 326 Ill. App. 639.) The court is not required to go to the record to determine whether other instructions given but not abstracted would supply the omissions or cure the defects complained of (*City of Roodhouse v. Christian,* 158 Ill. 137).

■ Defendant lastly urges as error that the verdicts of the jury were defective in that the jury rather than the court fixed the penalty. In *People v. O'Dell,* 343 Ill. App. 395, the Appellate Court of the Third District held that the 1943 Amendment, sec. 754a (b) of the Criminal Code providing that the jury shall fix the punishment in certain cases involving misdemeanors does not amend the Medical Practice Act, that it is the duty of the court and not of the jury to impose the penalty therein provided. In our opinion this construction of the statute is correct. Thus in the instant case it was not proper for the jury to fix the punishment or penalty. This assignment of error of the defendant is well taken and the case must be reversed so that the trial court may impose proper punishment on the ver-

dicts of guilty as to counts one and three. (*People v. Montana*, 380 Ill. 596; *Henderson v. People*, 165 Ill. 607.)

Accordingly the judgments of conviction of the defendant as to counts one and three of the indictment are affirmed but the cause is remanded to the circuit court for imposition of proper punishment. The judgment is reversed as to count two of the indictment.

*Judgment affirmed in part, reversed in part, and remanded with directions.*