(No. 26660.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* MAURO MONTANA, Plaintiff in Error.

*Opinion filed September 25, 1942—Rehearing denied Nov. 11, 1942.*

WM. SCOTT STEWART, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and THOMAS J. COURTNEY, State's Attorney, (EDWARD E. WILSON, JOHN T. GALLAGHER, and MELVIN S. REMBE, of counsel,) for the People.

Mr. CHIEF JUSTICE STONE delivered the opinion of the court:

Plaintiff in error, Mauro Montana, was convicted in the criminal court of Cook county on the charge of assault with intent to commit murder and was sentenced to the penitentiary for a term of one to fourteen years. The trial judge, in accordance with the provisions of an act to revise the law in relation to the sentence and commitment of persons convicted of crime, as amended in 1941, (Ill. Rev. Stat. 1941, chap. 38, par. 801, *et seq.*) made a recommendation that the minimum imprisonment be ten years and the maximum fourteen years. Montana was impleaded with four other defendants, none of whom was apprehended. He brings the cause here assigning certain errors on the trial, and contending that the Parole act as amended in 1941 is unconstitutional and void.

It is contended the evidence is not sufficient to support the verdict and that errors were committed in the admis-

sion of evidence and in instructions to the jury. It is also complained that the conduct of the prosecutor was prejudicial. The evidence of the State was that Frank Zito, the complaining witness, on July 25, in response to a note left at his home, purported to have been written by the defendant, met the latter that night and together they drove to Laflin street in the city of Chicago, stopping in front of an old house, which was used by defendant and his friends as a club. Montana went into the house and left complaining witness and the driver, one Esposito, in the car. Later Montana returned with two men who complaining witness identified as Iacullo and Greco. Complaining witness testified that he was ordered out of the car and pulled into another car across the street; that these men hit him over the head with guns and knocked him to the floor and then drove away with him; that they drove into a narrow alley and threw him out of the car "like a sack of potatoes" and shot him. Zito, the complaining witness, was later found and taken to a hospital. He at first refused to disclose the names of his assailants but when later told he was about to die he said that defendant was one of the group. Montana was arrested and taken to the hospital and identified by Zito.

The defendant denied any complicity in the crime and accounted for the note and meeting by saying that Zito had spoken to him concerning the employment of defendant's brother, a lawyer, in the matter of defending Zito in some federal indictments. He denied that the appointment mentioned in his note was kept or that he had anything to do with Zito.

Principal testimony supplied by the State was that of complaining witness Zito. The defense showed that Zito and also his wife had been supported by the State's Attorney in a hotel pending the trial, whereupon the State's Attorney, over objection of defense counsel, offered proof that Zito's wife was pregnant and had no means of support. The

defense contends that Zito is a man unworthy of belief. While there is a direct contradiction as to the defendant's implication in the assault, the jury who heard and saw the witnesses chose to believe the complaining witness and we are unable to say that on this record it erred in so doing.

Numerous errors are assigned as to the introduction and exclusion of evidence. Certain bullets were introduced in evidence over the objection of the defense that the finding of the bullets was not at the approximate time of the shooting as detailed by the State's witness, and that the testimony indicated only one bullet had been fired. The evidence showed three bullets were fired and three were found, one in Zito's body and two at the scene of the shooting. Those at the scene of the shooting were found while officers were searching the premises soon after the shooting. No error appears in this connection.

It is also contended that certain evidence was wrongfully excluded. Police officer McCutcheon, on direct examination, testified to the finding of the bullets. He gave no testimony as to conversation with Zito, concerning that or any other matter. On cross-examination counsel endeavored to bring out from the officer testimony as to certain conversations had with Zito. The court refused to permit this testimony on the ground that it was not proper cross-examination. This was not error. (*People* v. *Robertson,* 284 Ill. 620.) We see no prejudicial error in permitting the State to show the condition of Zito's wife in explanation of keeping her with her husband pending trial. The fact that she was at the hotel on direction of the State's Attorney was brought out by counsel for the defense on direct examination.

Certain instructions are said to be erroneous. Instruction No. 1 informs the jury as to the presumption of innocence. This instruction has been before this court in previous cases. Certain portions of it are here criticized as minimizing the presumption of innocence and defendant's

counsel cite *People* v. *Kopke,* 376 Ill. 171, where an instruction containing parts of the language of this instruction was commented on. However, in that case the instruction did not contain the statement that the presumption of innocence obtains throughout the trial. Such is contained in the instruction before us. Plaintiff in error's contention cannot be sustained.

Instruction No. 3 is the usual stock instruction on credibility of witnesses with the additional language, "The same tests hereinabove given are to be applied to the testimony given by the defendant. You have no right to disregard the testimony of the defendant simply because he is accused of crime." It is contended that this instruction requires the jury to test the credibility of the defendant alone by the circumstances enumerated in the instruction. We are not impressed with this argument but are of the opinion that the instruction was proper. Instruction No. 8 stated the law on alibi as a defense, declaring that the proof must cover the whole of the time so as to render it impossible or highly improbable that defendant could have committed the act. In *People* v. *Gasior,* 359 Ill. 517, the cases theretofore decided by this court on that question were reviewed and it was held, following the decision of *People* v. *Thompson,* 321 Ill. 594, that this instruction was proper when given with instructions as to what quantity of proof is sufficient to establish an alibi. In this case instructions 6 and 7 go into that matter fully. Instruction No. 5 complained of defines the crime of assault with intent to murder and sets forth the statutory penalty. Defendant's counsel urges that it was erroneous to give this instruction because it does not refer to the provisions of the Parole Act. This objection is without merit. The Parole Act relates to the sentencing, custody and supervision of the criminal after conviction and not the penalty itself, which is fixed by statute.

Plaintiff in error also assigns as error the imposition of sentence under the so-called Parole Act as amended in 1941,

and the recommendation entered by the court in accordance with sections 2 and 3a of that act.

A great deal of plaintiff in error's brief is devoted to the contention that the Parole Act is invalid *in toto,* and that this court was in error in sustaining it originally, as was done in the following cases: *People* v. *Mikula,* 357 Ill. 481, *People* v. *Dwyer,* 324 id. 363, *People* v. *Cohen,* 307 id. 87, *People* v. *Bernstein,* 304 id. 351, and *People* v. *Doras,* 290 id. 188. We are not disposed to again review that contention as it has been made and disposed of in numerous cases decided by this court, as indicated in the citations just noted.

The amendment of 1941 is attacked as invalid on the ground that it delegates executive and judicial powers to the Division of Correction, an administrative body. Section 2 was amended by omitting therefrom the former prohibition that the court in imposing a general sentence shall not fix the limit or duration of imprisonment, and providing that the court make an advisory recommendation as to the minimum and maximum duration of imprisonment. The language is: "Provided that the Court shall, in each case, make an advisory recommendation of the minimum and maximum limits or duration of such imprisonment, and for the purpose of making such recommendation, may, after conviction of the person, consider the evidence, if any, received upon the trial, and the evidence, if any, as to aggravation and mitigation of the offense, received on a plea of guilty, and may also hear and receive evidence as to the moral character, life, family, occupation, and criminal record, if any, of such person so convicted. The advisory recommendation of the Court may recommend a minimum limit or duration of imprisonment greater than the minimum term provided by law for the offense for which the person stands convicted and a maximum limit or duration of imprisonment less than the maximum term provided by law for such offense. In no event shall the

term of imprisonment or commitment be less than the minimum nor greater than the maximum term provided by law for such offense. The advisory recommendation of the Court shall in each case be entered upon the records thereof. It shall be deemed and taken as a part of every such sentence, as fully as though written therein, that the term of such imprisonment or commitment may be terminated earlier than the maximum by the Division of Correction, by and with the approval of the Governor in the nature of a release or commutation of sentence or commitment."

Section 3, providing for commitment to the several institutions, was amended to conform to section 2 by incorporating the above provision therein. Section 3a is an entirely new section, added in 1941, and provides as follows: "The minimum and maximum limits or duration of imprisonment as recommended in any advisory recommendation of the Court in accordance with the provisions of Sections 2 and 3 of this Act may be increased or diminished by the concurrence of any four of the five members of the Division of Correction and the approval in writing of the Director of the Department of Public Safety; provided that in no case may the minimum limit or duration of imprisonment as prescribed by the Division of Correction and the Director of Public Safety be less than the minimum term of imprisonment provided by law for the offense for which the person has been convicted or committed nor may the maximum limit or duration of imprisonment as so prescribed by the Division of Correction and the Director of Public Safety be greater than the maximum term of imprisonment provided by law for such offense. The concurrence of any four of the five members of the Division in prescribing a change in either or both the minimum and maximum limits or duration of imprisonment recommended in the advisory recommendation of the court shall be ineffective without the written approval thereof by the Director of Public Safety as herein provided, and, in

the event said Director of Public Safety withholds such written approval, the recommendations of the court shall remain in full force and effect. A copy of the order of the Division of Correction effecting a change in either the minimum or maximum limits or duration of imprisonment recommended in any advisory recommendation, or effecting a change in both such minimum and maximum limits or duration of imprisonment, and the approval thereof by the Director of Public Safety, shall be transmitted by said Division of Correction to the Clerk of the Court in which the sentence of imprisonment or commitment was imposed and shall be entered by said Clerk on the records of said Court.

"The minimum and maximum limits or duration of imprisonment recommended in any such advisory recommendation may both be changed in one order of the Division of Correction and the approval of the Director of Public Safety, or an order of the Division and the approval of the Director of Public Safety effecting a change in the minimum limit or duration of imprisonment may be made at one time and an order of the Division and the approval of the Director changing the maximum limit or duration of imprisonment may be made at another time; provided, that the Division of Correction and Director of Public Safety having once effected a change in such minimum or maximum recommendation of the court, shall thereafter have no power again to consider or change such recommendation or the prior order of said Division and the Director of Public Safety relating thereto."

Section 7 is amended to read as follows: "No prisoner or ward sentenced or committed, or committed under a general or indeterminate sentence, shall be eligible to parole after his or her commitment in the penitentiary, reformatory for women or State institution in this Act mentioned, until he or· she shall have served the minimum limit or duration of imprisonment recommended in the advisory

recommendation of the court in which sentence was imposed, or in the event such minimum limit or duration of imprisonment so recommended has been diminished or increased as provided in Section 3a of this Act, until he or she shall have served the minimum limit or duration of imprisonment so changed as in said Section 3a provided, (or, in case the prisoner or ward was sentenced prior to the effective date of this amendatory Act of 1941, until he or she shall have served the minimum term of imprisonment provided by law for such offense) and, in either event, less good time allowed as provided by law. Unless a prisoner or ward is earlier discharged as provided in section 9 of this Act, the Division of Correction shall terminate the term of imprisonment of a prisoner or ward committed hereunder, by and with the approval of the Governor in the nature of a release or commutation of sentence or commitment, and issue a final discharge, at the expiration of the maximum limit or duration of imprisonment recommended in the advisory recommendation of the court, or, in the event such maximum limit or duration of imprisonment has been changed by the order of the Division and the approval of the Director of Public Safety as provided in Section 3a of this Act, at the expiration of such maximum limit or duration of imprisonment so prescribed in such order, (or, if the prisoner or ward has been sentenced or committed prior to the effective date of this amendatory Act of 1941, at the expiration of the maximum term provided by law for the offense for which such prisoner or ward stands convicted), making allowance, in either event, for good time as provided by law."

Section 7a as amended, contains the following provisions: "The case of such parole violator, when so returned shall be brought before the said Division of Correction for determination of such parole violation, and if said Division shall determine upon hearing, that such prisoner violated his or her parole agreement, he or she shall be detained

in said penitentiary, reformatory or other institution to serve the maximum limit or duration of his or her imprisonment recommended in the advisory recommendation of the court unless such maximum limit or duration of imprisonment has been changed as in Section 3a of this Act provided in which case the prisoner shall be detained until the expiration of the maximum limit or duration of imprisonment so changed (or, if the prisoner was sentenced or committed prior to the effective date of this amendatory Act of 1941, the prisoner shall be detained until the expiration of the maximum term of his or her sentence as provided by law) giving, in either of such events, credit only for time faithfully served in prison and on parole before violation: Provided, however, such returned prisoner or ward may again be paroled or discharged earlier than the termination of such maximum limit or duration of imprisonment or sentence, as the case may be, in the discretion of the Division of Correction."

There is in these amendments an apparent legislative intent to grant to the court power to fix the minimum and maximum duration of imprisonment within the limits of the penalty provided by law for such crimes, in contrast to prior statutory prohibition against its so doing. This is made to appear from the fact that such prohibition found in the original act was omitted from the amended act and also in the provision of section 3a that the recommendation of the court shall remain in full force and effect unless positive action is taken by four concurring members of the Division of Correction, and counsel argues that this language shows an intent that the court's so-called recommendation shall be regarded as a part of its judgment. Such recommendation is to be made after consideration of the evidence and circumstances before the court and such as may be adduced touching matters of aggravation or extenuation. It seems clear from this language that the so-called recommendation is to be considered more than mere

advice. In the absence of the concurrence of four members of the Division of Correction directing otherwise, it is to remain the maximum and minimum duration of the prisoner's confinement.

That it was the legislative intent that the so-called recommendation become a part of the judgment, is also strongly indicated by the language in section 7a which provides that a prisoner violating his parole shall be detained in the penitentiary to serve the maximum limit recommended by the court, or as changed under section 3a, providing that the prisoner may be paroled or discharged earlier than such maximum limit in the discretion of the Division of Correction. Viewing, as we must view, this "recommendation" as a part of the sentence imposed, we come then to two questions: (1) Whether such a sentence meets the requirement long held by this court to be essential, that is, that a judgment and sentence must be definite and certain, (*People ex rel. Hinckley* v. *Pirfenbrink,* 96 Ill. 68,) and (2) Whether the power given to the Division of Correction to change the maximum or minimum as recommended by the court, amounts to vesting in an administrative body judicial powers and functions.

The Parole Act prior to the amendment of 1941 has been sustained on the ground, among others, that the indeterminate or general sentence was a sentence for the maximum term of imprisonment provided by law and was therefore definite and certain. *People* v. *Connors,* 291 Ill. 614, *People* v. *Doras, supra; People* v. *Nowasky,* 254 Ill. 146; *People* v. *Joyce,* 246 id. 124; *People* v. *Peters,* id. 351.

It is further argued that the language of this act as amended shows that it was the legislative intent that the Division of Correction, an administrative body, be given power to change the sentence of the court as embodied in its recommendation. It will be noted that the so-called recommendation is not one of the maximum or minimum within which the court thinks the prisoner may be eligible

to come before the Board for parole or be paroled, but the language is that the court "shall in each case make an advisory recommendation of the minimum and maximum limits or duration of such imprisonment." It is argued that the recommendation is not a part of the sentence and the sentence imposed is for the maximum term and is a matter with which the recommendation has nothing to do, and therefore the jurisdiction of the Division of Correction has nothing to do with the sentence, and that the ruling in *People* v. *Mikula, supra,* and other cases, is applicable here.

The provisions of these amendments seem to us, however, to bear a more direct relationship to the sentence itself. As indicated by the various provisions hereinbefore quoted, such recommendation shall be the maximum and minimum of the sentence unless the Division of Correction, by concurrence of four of its five members, shall change it. Also section 7 provides that the Division of Correction "shall terminate the term of imprisonment of a prisoner or ward committed hereunder, by and with the approval of the Governor in the nature of a release or commutation of sentence or commitment, and issue a final discharge, at the expiration of the maximum limit or duration of imprisonment recommended in the advisory recommendation of the court," or, if changed, then as so changed. It seems inescapable from these considerations, that the recommendation prescribed by the act must be construed as a part of the sentence. When the duration of imprisonment has expired in accordance with such recommendation, there is no discretion in the Division of Correction, but the prisoner must be discharged.

The act as amended in effect provides that in the absence of change by the Division of Correction, the maximum fixed in the recommendation of the court shall be the maximum sentence, and thus the situation may arise that the prisoner is entitled to discharge regardless of the action of the Governor, provided the recommendation fixing the

maximum be considered a legal exercise of power. The power to impose sentence as a punishment for crime is purely judicial. The sentence must be definite and certain. As such it is final, subject only to review by higher courts. As this court said in *People ex rel. Martin* v. *Mallary,* 195 Ill. 582: "In the administration of the criminal laws of the State there is no power outside of the courts to authorize the punishment of persons for crime by confinement in the penitentiary, and the constitution expressly inhibits any person or collection of persons of one department of government from exercising any power properly belonging to either of the others." Section 3a vesting in the Division of Correction the power to change the maximum and minimum limit and duration of imprisonment from that recommended by the trial court, seems, when all provisions of the amendment are considered, clearly to vest judicial power in an administrative body. The fact that the act requires that the recommendation be made a part of the record, and that the action of the Board in changing the duration as fixed by such recommendation, must also be filed of record in the court where the case was tried, indicates most strongly the judicial character of such acts. From the provisions of these amendments as just cited and the provision that if not changed by the Division of Correction the "recommendation" shall be the maximum and minimum of the sentence, it is seen that a change of the "recommendation" increasing the maximum is in effect an increase of the sentence by an administrative body. When the General Assembly made it the judicial duty of the court to make "recommendations," the very nature of that duty barred its vesting in an administrative board. If it be said that the recommendation is not a judicial function, and therefore a change in the duration fixed by such recommendation not a judicial act, then the question arises, What character of act is it which the court must perform in making this recommendation? It is to be made on a hear-

ing and with all of the usual legal procedure attending any judgment, sentence or finding of the court, and we are unable to see that such act is not judicial in character. This being so, it requires no citation of authority to demonstrate that under our form of government an administrative board has no power to change a judicial judgment.

It is argued that the provision in section 2 as amended, "It shall be deemed and taken as a part of every such sentence, as fully as though written therein, that the term of such imprisonment or commitment may be terminated earlier than the maximum by the Division of Correction, by and with the approval of the Governor in the nature of a release or commutation of sentence or commitment," indicates that the sentence itself is intended to give the Division of Correction authority to act. This argument overlooks the fact that such provision was also in the so-called Parole Act prior to these amendments, yet it was held in *People ex rel. Michaels* v. *Bowen,* 367 Ill. 589, that the act does not and could not authorize the Parole Board to change or amend a judicial order of the court.

For these reasons we are of the opinion that the amendments sought to be made to sections 2, 3, 7 and 7a, and section 3a added, are unconstitutional and void. It follows that the Sentence and Parole Act as it existed prior to those amendments of 1941 affords the only guide to be followed in sentencing prisoners convicted of crime. (*Rippinger* v. *Niederst,* 317 Ill. 264; *People ex rel. Akin* v. *Butler Street Foundry and Iron Co.* 201 id. 236; *People ex rel. Kern* v. *Nelson,* 156 id. 364.) Plaintiff in error having been legally convicted, the judgment will be reversed and the cause remanded to the criminal court of Cook county with directions to enter a proper sentence.

*Reversed and remanded, with directions.*