2016 IL App (4th) 140321

NO. 4-14-0321

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| CONRAD ALLEN MORGER, | ) | No. 12CF1330 |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | Honorable |
| | ) | Scott Daniel Drazewski, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Justices Appleton and Pope concurred in the judgment and opinion.

**OPINION**

¶ 1 Following a February 2014 bench trial, the trial court convicted defendant, Conrad Allen Morger, of (1) aggravated criminal sexual abuse (720 ILCS 5/11-1.60(d) (West 2010)) and (2) criminal sexual abuse (720 ILCS 5/11-1.50(a)(1) (West 2010)). The court later sentenced defendant to (1) 180 days in jail, which the court stayed, and (2) probation for 48 months.

¶ 2 Defendant appeals, arguing that the State failed to prove him guilty beyond a reasonable doubt of either charge. Alternatively, defendant argues that (1) the conditions of his probation were unreasonable, overly broad, and unrelated to his conviction or rehabilitation; and (2) the trial court erred by delegating its judicial discretion to the McLean County court services department to determine an appropriate sentence. For the following reasons, we affirm in part and vacate in part.

¶ 3                                    I. BACKGROUND

¶ 4                              A. The State's Charges

¶ 5          In January 2013, the State charged defendant with (1) aggravated criminal sexual abuse and (2) criminal sexual abuse. Each charge alleged that defendant's criminal acts—perpetrated against his sister, K.M. (born September 22, 1997)—occurred between August 2010 and November 2012.

¶ 6                              B. The State's Evidence

¶ 7          The following evidence was presented by the State at defendant's February 2014 bench trial.

¶ 8          In December 2012, Normal police department detective William Angus observed an interview that a Department of Children and Family Services (DCFS) investigator conducted with K.M. Statements K.M. made during that interview caused Angus to interview defendant (born May 14, 1992) later that same month. A recording of Angus's interview with defendant—which was played for the trial court—revealed the following.

¶ 9          Defendant began the interview by admitting to Angus that he had "messed up" and had done "something terrible to [K.M.]." Defendant recalled that K.M. was seated on the living room couch located in their parents' home when he "touched [K.M.] inappropriately" on her "private parts." When Angus asked whether defendant had touched K.M.'s vagina and breasts, defendant nodded affirmatively and said, "Yes, both," adding, "as far as I remember." Defendant added that he made skin-to-skin contact with K.M.'s breasts and rubbed her vagina underneath her clothing with his hand. During his touching, K.M. did not say "a whole lot." Defendant could not remember how he manipulated K.M.'s clothes to touch her breasts and

vagina. Afterward, defendant told K.M. that "we couldn't do it again" and "not to tell mom and dad." Defendant could not provide the date when this specific incident occurred but estimated that it happened more than a year earlier, when he was a high school junior. Defendant approached K.M. at that time because he was "horny" and "it seemed like a good idea for whatever reason."

¶ 10    Angus told defendant he had information that defendant inappropriately touched K.M. on three different occasions. Defendant admitted that (1) although he could not recall how many times he had done so, his inappropriate touching occurred "more than once"; (2) he "touched [K.M.] everywhere"; (3) the first incident occurred when he was "probably a junior" in high school; (4) the last incident occurred when he was in high school; and (5) in May 2010, he graduated high school. Defendant stated that he had "touched [K.M.] and made [K.M.] touch me." Although defendant did not "think it was that abrupt," he "was sure" that he grabbed K.M.'s hand and placed it on his penis.

¶ 11    Defendant stated that "the same stuff, the same things happened" during the subsequent incidents, but he reiterated that he could not remember how many additional times he had inappropriately touched K.M. Defendant denied that he had inappropriately touched K.M. in the past year. When Angus asked again whether defendant had touched K.M.'s breasts or vagina, defendant replied, "I'm sure I did both times. I am sure I did both times."

¶ 12    At one point, Angus stopped questioning defendant and left the interview room. Before leaving, Angus provided defendant a pad of paper so that he could write down any information that might cause him to remember dates and times. Defendant's subsequent notes, which were admitted into evidence, revealed the following:

"I did it for my own urge. I don't know when I thought it would be

a good idea, but I did. And then I did it again more times. Not frequently like once a day. Other than because felt [*sic*] terrible about it, I don't know why it was sporatic [*sic*]. I really do want to get help. I want [K.M.] to get as much as she needs too. Because it's my fault she needs in the first place [*sic*]. I can't remember how many times it happened, I know I did it more than once, I know touched [*sic*] her everywhere. I am so sorry I caused [K.M.] this pain."

¶ 13 Connie Morger, defendant's mother, testified that prior to K.M.'s December 2012 interview at the child advocacy center, K.M. told her about defendant's inappropriate touching. When Connie and her husband, Rob Morger (the biological father of K.M. and defendant), confronted defendant, he would neither confirm nor deny K.M.'s accusation. Connie and Rob immediately "removed" defendant from their home to ensure K.M's safety. Thereafter, K.M. received counseling to address her "guilt, embarrassment, and remorse."

¶ 14 K.M., who was then 16 years old, testified that the "incidents" with defendant occurred "more than twice." The following exchange occurred:

"Q. [Assistant State's Attorney]: *** In a general sense, what are the parts of your body that people shouldn't touch?

A. [K.M.]: Your body, because it's your own body. It's your own personal space.

Q. *** But are there some parts that are more private than others?

A. Yeah.

Q. *** What are those parts?

A. Your legs and your chest and your head.

*  *  *

Q. *** [I]s it appropriate if someone touches your butt?

A. No.

*  *  *

Q. And you said your chest. Are we talking about all your chest—

A. Yep.

Q. —or are we talking about your breasts?

A. All of it.

Q. *** [I]s it appropriate if someone touches your vagina?

A. No.

Q. *** Were any of those body parts the ones that were touched by [defendant]?

A. Yes.

Q. *** [W]hich of those body parts did your brother touch?

A. All of them.

Q. *** [W]hen you said it happened more than two times, on each of those times were all of those places touched?

A. I don't remember."

K.M. also testified that when (1) defendant touched her breasts and vagina and (2) she touched defendant's penis, the touches were skin-to-skin contact. K.M. could not remember whether

defendant grabbed her hand and forced her to touch his penis.

¶ 15       Charnette Griffin, a DCFS child protection investigator, testified that in December 2012, she conducted an interview with K.M. That interview, which was recorded and played for the trial court, revealed, in pertinent part, the following.

¶ 16       When K.M. was 13 or 14 years old, she was watching television in her family's living room when defendant walked in wearing only boxer briefs, sat on her, and "tried to force" K.M. to touch him. K.M. explained that as she was sitting in a chair, defendant sat on her with his back to K.M.'s face and tried to "grab my arms and make me touch his lower." Griffin asked K.M. what she meant by "lower," and K.M. responded, "the wee-wee." K.M. elaborated that defendant "would *** grab my hands and my arms and try to make me *** touch him." Defendant also grabbed and squeezed one of K.M.'s breasts over her clothing. In response, K.M. attempted to "push [defendant] and tell him to stop and go away because I didn't want any part of it." K.M. acknowledged that while pushing defendant away, her hand had touched defendant's penis over his briefs. K.M. estimated that after three or four attempts to get her to touch his penis, defendant stopped because K.M. continued to "keep pushing [defendant] and trying to get him off of me." K.M. recalled that after this initial attempt, defendant repeated the aforementioned events on two more occasions.

¶ 17       During the second encounter, K.M.—who estimated that she was 14 years old at that time—was lying on a couch reading a book when defendant came in, took off his trousers, lay on top of K.M. in his briefs, and repeatedly said, "come on, come on," and "let's just do this" in an attempt to get K.M. to touch his penis. As K.M. kicked defendant in an attempt to get him off and away from her, K.M. made accidental contact with defendant's penis.

¶ 18       The last incident occurred in August or September 2012, when K.M. was either

14 or 15 years old. During that third incident, defendant, who was dressed only in blue plaid briefs, approached K.M. as she watched television in the living room. Defendant sat on K.M. and attempted to get her to touch his penis by grabbing K.M.'s arms. After K.M. refused to comply, defendant told K.M. not to say anything because he would "be in huge trouble." During this encounter, K.M. did not touch defendant's penis.

¶ 19    Defendant did not present any evidence.

¶ 20                    C. The Trial Court's Judgment

¶ 21    Following argument, the trial court convicted defendant on both counts, finding as follows:

"[I]f you look at *** count I where the [State alleged that] defendant knowingly committed an act of sexual conduct with [K.M.] by forcing her to touch his penis and that the act was done for sexual gratification or arousal of the defendant and the act was committed by the use of force. What's the evidence to support that, meaning that allegation? The defendant.

Count II, the allegation being that [defendant] knowingly committed an act of sexual contact with [K.M.] by touching [K.M.'s] breast area, said act being for the purpose of sexual gratification or arousal of the defendant, when [K.M.] was at least 13 years of age but under 17 years of age and *** defendant was at least five years older than her. What's an equivocal basis for the State being able to prove that particular allegation. The defendant.

So although [K.M.] may not have said specifically that those events took place on those particular days, she did corroborate in essence that those events took place on three separate occasions and *** defendant was the one who

- 7 -

indicated or corroborated in essence the charge itself by his statements made to [Angus].

So looking at all the evidence then, the court finds that the State has met its burden of proof of beyond a reasonable doubt and will find *** defendant guilty of counts I and II."

In April 2014, the court sentenced defendant as previously noted.

¶ 22          This appeal followed.

¶ 23                              II. ANALYSIS

¶ 24          Defendant argues that the State failed to prove him guilty beyond a reasonable doubt of either charge. Alternatively, defendant argues that (1) the conditions of his probation were unreasonable, overly broad, and unrelated to his conviction or rehabilitation; and (2) the trial court erred by delegating its judicial discretion to determine an appropriate sentence to McLean County court services. We consider defendant's claims, in the following order.

¶ 25                        A. Sufficiency of the Evidence

¶ 26                          1. *The Standard of Review*

¶ 27          When reviewing a challenge to the sufficiency of the evidence, we determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Phillips*, 2014 IL App (4th) 120695, ¶ 19, 14 N.E.3d 1. In so doing, we allow all reasonable inferences from the record in favor of the State. *People v. Beauchamp*, 241 Ill. 2d 1, 8, 944 N.E.2d 319, 323 (2011). " 'We will not reverse a conviction unless the evidence is so

improbable, unsatisfactory, or inconclusive that it creates a reasonable doubt of defendant's guilt.' " *People v. Mefford*, 2015 IL App (4th) 130471, ¶ 45, 44 N.E.3d 616 (quoting *People v. Collins*, 214 Ill. 2d 206, 217, 824 N.E.2d 262, 267-68 (2005)).

¶ 28            2. *Defendant's Challenge to His Aggravated Criminal Sexual Abuse Conviction*

¶ 29            Defendant's challenge to his aggravated criminal sexual abuse conviction concerns K.M.'s age. Specifically, defendant contends that the State's evidence regarding K.M.'s age at the time the inappropriate touching incidents occurred was "incredible, inconsistent, and lack[ed] critical detail." We disagree.

¶ 30                              a. The State's Charge

¶ 31            The State's aggravated criminal sexual abuse charge alleged as follows:

"[Defendant] knowingly committed an act of sexual conduct with K.M. by touching K.M.'s breast area, said act being for the purpose of sexual gratification or arousal [of] the defendant, when K.M. was at least 13 years of age but under 17 years of age and defendant was at least five years older than K.M."

¶ 32                              b. The Statute at Issue

¶ 33            Section 11-1.60(d) of the Criminal Code of 1961 (Criminal Code), which defines the offense of aggravated criminal sexual abuse, provides as follows:

"A person commits aggravated criminal sexual abuse if that person commits an act of sexual penetration or sexual conduct with a victim who is at least 13 years of age but under 17 years of age and the person is at least 5 years older than the

victim." 720 ILCS 5/11-1.60(d) (West 2010).

¶ 34     We note that prior to convicting defendant of aggravated criminal sexual abuse, the trial court specifically noted the following evidentiary inconsistencies defendant raises:

"[D]efendant, for all of his statements with respect to knowing what he did, was very, very careful in not giving a time frame unless he was absolutely positively pinned down and then when he was, would usually retract, in essence, what he said by saying I'm not sure; I don't know. And also with respect to the time frame, I don't think there is anything other than the one statement that *** in the first incident from *** defendant's perspective being that he was a junior in high school and then even after that he said I don't know.

So there [are] a lot of inconsistencies with regard to that. But there are less inconsistencies, and in fact, the court is making a finding that with respect to substantive evidence *** which includes the statements made by [K.M.] in December of 2012, that that is substantive evidence which the court believes is worthy of belief and is corroborative that being of the common statements that [were] made by both [K.M.] and [defendant]."

¶ 35     Immediately thereafter, the trial court noted that during Griffin's interview, K.M. detailed three separate times when defendant touched her inappropriately. Based on K.M.'s account of those three occurrences, specifically her estimated age during each incident—which the court found credible—the court determined that defendant's criminal actions occurred between August 2010 and November 2012, as the State alleged. The court also noted the following statements defendant made during his December 2012 interview with Angus, in which defendant admitted that he (1) rubbed K.M.'s vagina underneath her clothing; (2) touched both

- 10 -

of K.M.'s breasts underneath her clothing; and (3) was certain that he engaged in the rubbing and touching "both times," which the court inferred meant that defendant rubbed K.M.'s vagina and touched her breasts during the second and third occurrence.

¶ 36　　　　In other words, the trial court found credible K.M.'s testimony that she was (A) 13 or 14 years old during the first occurrence, (B) 14 years old during the second occurrence, and (C) 14 or 15 years old during the third occurrence of defendant's aforementioned criminal conduct. Based on defendant's admissions that he touched K.M.'s breast for his sexual gratification or arousal, the court found that the State had met its burden of proving defendant guilty of aggravated criminal sexual abuse beyond a reasonable doubt.

¶ 37　　　　Although defendant challenges the trial court's judgment by claiming that K.M. was approximately 11 years old at the time of the first occurrence by virtue of his testimony that he was a high school junior—and thus, he was approximately 16 years old—the court, as the trier of fact, was under no obligation to find defendant's statement credible. See *People v. Burney*, 2011 IL App (4th) 100343, ¶ 25, 963 N.E.2d 430 ("The trier of fact has the responsibility to determine the credibility of witnesses and the weight given to their testimony, to resolve conflicts in the evidence, and to draw reasonable inferences from that evidence."). Indeed, the court expressly found that defendant provided evasive and inconsistent responses when Angus questioned him on the timing of his criminal acts.

¶ 38　　　　Based on the evidence presented and the reasonable inferences the trial court could have drawn from that evidence, we reject defendant's claim that the State failed to prove him guilty beyond a reasonable doubt of aggravated criminal sexual abuse.

¶ 39    3. *Defendant's Challenge to His Criminal Sexual Abuse Conviction*

¶ 40    Defendant contends that the State failed to prove him guilty beyond a reasonable doubt of criminal sexual abuse because it failed to present evidence showing force was used to commit the sexual conduct. We disagree.

¶ 41    a. The State's Charge

¶ 42    The State's criminal sexual abuse charge alleged as follows:

"[Defendant] knowingly committed an act of sexual conduct with K.M. by forcing K.M. to touch defendant's penis, said act was done for the purpose of sexual gratification or arousal of defendant, and said act was committed by the use of force."

¶ 43    b. The Statute at Issue

¶ 44    Section 11-1.50(a)(1) of the Criminal Code, which defines the offense of criminal sexual abuse, provides as follows:

"(a) A person commits criminal sexual abuse if that person:

(1) commits an act of sexual conduct by the use of force or threat of force[.]" 720 ILCS 5/11-1.50(a)(1) (West 2010).

¶ 45    In support of his claim, defendant contends that the only evidence of force the State presented was K.M.'s statement to Griffin that defendant "would *** grab my hands and my arms and try to make me *** touch him." Defendant claims that this evidence was insufficient to establish proof beyond a reasonable doubt because the State did not present additional evidence that his attempt at force was successful. The evidence presented at

defendant's February 2014 bench trial contradicts his claim.

¶ 46    In addition to K.M.'s aforementioned statement, K.M. also told Griffin that defendant tried to (1) "force" her to touch him and (2) "grab my arms and make me touch his [wee-wee]." We note that in challenging his criminal sexual abuse conviction, defendant omitted his statements to Angus that (1) he had "touched [K.M.] and made [K.M.] touch me" and (2) although he did not "think it was that abrupt," he "was sure" that he grabbed K.M.'s hand and placed it on his penis.

¶ 47    In this case, the experienced trial judge presiding over defendant's trial heard and considered the totality of the evidence the State presented on the element of force requisite to sustain a conviction for criminal sexual abuse. After careful consideration of that evidence, the trial court found defendant guilty of that charge. Viewing the totality of the evidence defendant contends was insufficient in the light most favorable to the State, we conclude that any rational trier of fact could have found that the State had proved the essential elements of criminal sexual abuse beyond a reasonable doubt.

¶ 48    B. Defendant's Sentencing Claims

¶ 49    1. *Defendant's April 2014 Sentencing Hearing*

¶ 50    Prior to imposing a sentence at defendant's April 2014 sentencing hearing, the trial court addressed defendant, stating, in pertinent part, the following:

> "[A]lthough [the court] agree[s] that [the court] need[s] to have jail hanging over your head, [the court is] going to impose the 180 days in full, but you've got 38 *** day for day credit, so that takes you up to 76 [days]. But you've already got credit for that *** so [the court] is going to stay the [remaining] 104 days. [The

- 13 -

court] will set a remission hearing date *** to make sure that you are adhering to and complying with all terms and conditions of probation. And it is a lengthy process that is involved that being with the sex offender treatment.

* * *

*** Next, the duration then, for 48 months[;] ordinarily that's a long period of time to be on probation, but because of the anticipated length of time that it's going to take you to comply with among other things, the sex offender treatment and also to insure, [defendant], that you remain in compliance in essence with the terms of probation, [the court is] going to *** make it for the full term, that being 48 months of probation."

The court then admonished defendant about various mandatory costs, assessments, and fines defendant was obligated to satisfy within a three-year period.

¶ 51         Thereafter, the trial court entered a two-page form order entitled, "Order for Probation or Conditional Discharge." In that form order, the court filled in pertinent information in the appropriate blank spaces, marked certain boxes, and circled certain options that reflected the aforementioned probationary sentence the court imposed. Section P of the court's form order listed numerous additional conditions the court could impose by placing a checkmark in the provided box. One such additional condition—which the court imposed—stated the following: "[D]efendant's probation is to be served on Sex Offender Probation under the additional conditions provided by court services." That same day, defendant signed the following acknowledgment listed on the court's sentencing order: "I understand these conditions and acknowledge receipt of this order including the additional conditions of Intensive or Sex Offender Probation if applicable." Appended to the court's sentencing order was a "supplemental

sentencing order felony," which listed the mandatory costs, assessments, and fines the court imposed.

¶ 52        Four days later, defendant and his probation officer signed a two-page form entitled, "Additional Conditions of Sex Offender Probation," which contained 20 sex offender probation conditions and an additional 4 conditions (conditions 21 to 24) that applied to "child sex offenders." The following nine conditions are from that form that defendant now claims are unreasonable, overly broad, and unrelated to his conviction or rehabilitation:

"The defendant shall:

(4) Not possess, access or use a computer or any device with internet capability, or have any such device on his person or in his residence or vehicle, without prior written approval of the probation officer. If given approval to use such devices or if found in possession of such devices, the defendant shall:

a) Submit to periodic unannounced examinations of his computer or any other device with internet capability (including any cellular phone or similar device with internet capability) by the probation officer, a law enforcement officer, or assigned computer or information technology specialist, including the retrieval and copying of all data from the computer or device and any internal or external peripherals and removal of such information, equipment, or device to conduct a more thorough inspection.

b) Submit to the installation on his computer or device with internet capability, at his expense, of one or more hardware or software systems to monitor the internet use.

c) Not use any computer scrub software on any computer that the sex offender uses.

d) Submit to any other appropriate restrictions concerning his use of or access to a computer or any other device with internet capability imposed by the probation officer.

\* \* \*

(7) Not have contact with, or attempt to have contact with, any persons under the age of 18, regardless of familial relationship, either in person or by phone, mail, internet, or other mode of communication unless approved by the probation officer and treatment provider.

(8) Not reside at the same address, in the same condominium unit or complex, or in the same apartment unit or complex, or with another person he knows or reasonably should know is a convicted sex offender. This includes any trailer park in which the homes are addressed by lot number, without a designated street address.

\* \* \*

(11) Not attend, work at, or participate in any County fair, State fair, local fair, festival, or carnival.

\*\*\*

(13) Not consume, use, or possess any alcoholic beverage, or enter any establishment where the principal business is the sale of alcohol beverages.

\* \* \*

(20) Comply with any additional conditions deemed appropriate by the probation officer and comply with any new laws which become effective during the period of probation.

\*\*\*

(22) Not enter any public park property.

(23) Not be present on the property of, or loiter or sit idly within 500 feet of, a school, park, playground, daycare facility, home daycare, or child care institution.

(24) Not be present within 100 feet of a posted school bus stop."

¶ 53                    2. *Defendant's Delegation Claim*

¶ 54        Defendant argues that the trial court erred by delegating its judicial discretion to the McLean County court services department to determine an appropriate sentence. We agree.

¶ 55        Illinois jurisprudence has long held that " 'the power to impose sentence is exclusively a function of the judiciary.' " *People v. McChriston*, 2014 IL 115310, ¶ 8, 4 N.E.3d 29 (quoting *People v. Phillips*, 66 Ill. 2d 412, 415, 362 N.E.2d 1037, 1039 (1977)). See *People v. Montana*, 380 Ill. 596, 608, 44 N.E.2d 569, 575 (1942) ("The power to impose sentence as a punishment for crime is purely judicial.").

¶ 56        We conclude that the trial court erred when it purportedly imposed 24 probationary conditions merely by checking a box on the probation order, which stated that "defendant's probation [was] to be served on Sex Offender Probation under the additional conditions as provided by Court Services." Defendant acknowledged receipt of those additional probationary conditions only after the court services department provided him a copy of the two-

page form that contained these additional conditions four days after the sentencing hearing.

¶ 57 Because the imposition of probationary conditions is part of sentencing, the trial court must impose any such conditions at the sentencing hearing and may not delegate that authority to any third party, including the court services department. The court could easily have done so in this case by (1) signing, at the sentencing hearing, the sex offender probation order that contained the probationary conditions; (2) informing defendant that the court was imposing these special probationary conditions; (3) explaining these special conditions to defendant, including why the court was imposing them; and (4) giving a copy of that order to defendant. We note that in *People v. Goossens*, 2015 IL 118347, ¶ 13, 39 N.E.3d 956, the supreme court wrote that "any additional [probationary] condition not expressly authorized by statute 'may be imposed as long as it is (1) reasonable and (2) relates to (a) the nature of the offense or (b) the rehabilitation of the defendant as determined by the trial court.' " (quoting *People v. Meyer*, 176 Ill. 2d 372, 378, 680 N.E.2d 315, 318 (1997)).

¶ 58 We add that nothing in this opinion should be read as diminishing the discretion possessed by the court services department to supervise a defendant's compliance with the specific terms of probationary conditions imposed. All we are saying is that those conditions must be judicially imposed. Because the trial court here failed to do so, we vacate defendant's sentence and remand for further proceedings.

¶ 59 In so concluding, we decline to address defendant's remaining argument that the nine aforementioned probationary conditions were unreasonable, overly broad, and unrelated to his conviction or rehabilitation. If, on remand, the trial court chooses to implement any of those conditions, defendant can raise those objections at that time.

¶ 60                                    III. CONCLUSION

¶ 61        For the foregoing reasons, we affirm defendant's conviction, vacate defendant's sentence, and remand for further proceedings. As part of our judgment, because it successfully defended part of the appeal, we award the State its $75 statutory assessment against defendant as costs of this appeal. 55 ILCS 5/4-2002 (West 2014).

¶ 62        Affirmed in part and vacated in part; cause remanded.