2022 IL App (1st) 192023
No. 1-19-2023
Opinion filed March 31, 2022

First Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 09 CR 07794 |
| | ) | |
| ANTON RUTH, | ) | Honorable |
| | ) | Arthur F. Hill, Jr., |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justice Walker concurred in the judgment and opinion.
Justice Coghlan specially concurred, with opinion.

**OPINION**

¶ 1    After pleading guilty to aggravated criminal sexual assault, Anton Ruth made repeated attempts to challenge his mandatory supervised release term (MSR). Relevant here, he filed a section 2-1401 petition (735 ILCS 5/2-1401 (West 2018)), arguing the statutory provisions allowing the Prisoner Review Board to set conditions of MSR and "determine the length of [his] MSR term" violate the separation of powers and proportionate penalties clauses of the Illinois Constitution. See Ill. Const. 1970, art. I, § 11 (proportionate penalties); Ill. Const. 1970, art. II, § 1 (separation of powers). Both arguments stem from the same premise: the Prisoner Review Board

is unconstitutionally exercising judicial functions. We disagree, finding that setting the terms of MSR is akin to the executive function of prison administration and setting the release date represents no more than the executive's long-recognized ability to bestow grace on parolees who comply with the terms of parole.

¶ 2    We agree, however, with Ruth's second argument that the trial court erred in imposing fees and costs for filing a frivolous petition. Though we reject his claim on the merits, we find it arguable in law and fact. The trial court additionally erred by failing to make factual findings supporting its conclusion that Ruth filed his petition for purposes of delay, harassment, or needlessly increasing the cost of litigation. Accordingly, we vacate the trial court's order imposing $170 in fees and costs and remand directing the trial court to order a refund.

¶ 3                                    Background

¶ 4    In 2010, Anton Ruth pled guilty to one count of aggravated criminal sexual assault. The trial court imposed a nine-year sentence and admonished him that he would have to serve three years of mandatory supervised release after he completed his sentence. Ruth did not move to withdraw his plea or file an appeal from the sentence imposed.

¶ 5    After completing his nine-year sentence, Ruth learned that the trial court had mistakenly admonished him about his MSR term. Instead of three years of MSR, the Unified Code of Corrections required Ruth to serve an indeterminate period of MSR ranging from three years to life. See 730 ILCS 5/5-8-1(d)(4) (West 2010). And so began Ruth's efforts, through various filings, to enforce the trial court's original admonishment.

¶ 6    In November 2017, Ruth filed a petition under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2016)), alleging his trial counsel was ineffective for failing to advise him

correctly about the MSR term he faced. As a result, Ruth requested (i) withdrawal of his plea, (ii) a trial, and (iii) correct admonishments about the sentencing consequences of the charged offenses. With the help of the State, the trial court brought Ruth to court and admonished him that he would face a minimum sentence of 9 years and a maximum of 67 years if the court gave him the relief he sought. In Ruth's presence, the State also told the court that Ruth had already served the sentence to which he had agreed in his plea. Based on the court's new admonishments, Ruth withdrew his postconviction petition. The court then clarified that Ruth would have to serve three years to life on MSR instead of an absolute term of three years.

¶ 7    Still dissatisfied with his indeterminate MSR term, Ruth filed a "Complaint for *Mandamus*," arguing the Prisoner Review Board refused to determine whether Ruth could be released from prison on MSR. He asked the court to "determine the length of his MSR term to be served" and for "immediate release to begin serving his MSR period." After a brief in-court appearance, the trial court denied *mandamus* on the ground that Ruth had filed his complaint in the wrong county.

¶ 8    About a month later, in September 2018, Ruth filed a "Petition for Amended Sentencing Order," arguing that the Department of Corrections was "unlawfully detain[ing]" him. He correctly asserted that the trial court's original sentencing order said nothing about MSR, and the trial judge had told him that his MSR term would be three years when imposing the sentence. Ruth requested the court amend its sentencing order to reflect the original oral admonishment. The court denied Ruth's petition reasoning that the new admonishments during proceedings on Ruth's first postconviction petition had been sufficient, mainly because Ruth declined to pursue the claims after receiving the new admonishments.

¶ 9      Then, in February 2019, Ruth filed a petition for relief from judgment (see 735 ILCS 5/2-1401 (West 2018)), arguing that his indeterminate MSR term and the statute authorizing it were void *ab initio*. He reasoned that the General Assembly violated the separation of powers clause in the Illinois Constitution (Ill. Const. 1970, art. II, § 1) by impermissibly delegating the determination of the conditions of MSR to the Prisoner Review Board instead of the judiciary. Ruth relied heavily on the Fourth District's decision, *People v. Morger*, 2016 IL App (4th) 140321, ¶¶ 54-59, where the court held that the trial court improperly delegated its sentencing discretion to McLean County court services by failing to impose its own conditions of probation.

¶ 10     The trial court dismissed Ruth's petition. First, the trial court rejected Ruth's reliance on *Morger* because "case law from the fourth district appellate court *** is not binding to the first district, to which this court belongs." The trial court looked instead to the Illinois Supreme Court's decision in *People v. Rinehart*, 2012 IL 111719. There, the court interpreted section 5-8-1(d)(4) of the Code of Corrections (730 ILCS 5/5-8-1(d)(4) (West 2018)) to allow trial courts to impose indeterminate MSR terms instead of requiring them to impose determinate terms within the range of three years to life. *Rinehart*, 2012 IL 111719, ¶¶ 23-30. In addition to its order dismissing Ruth's petition, the court imposed $170 in fees "finding that all filings are entirely frivolous" because (i) they lacked an arguable basis in law or in fact, (ii) the factual contentions lacked evidentiary support, and (iii) the filings "were presented to hinder, cause unnecessary delay, and needless increase in the cost of litigation." This court granted Ruth's motion to file a late notice of appeal.

¶ 11                                   Analysis

¶ 12     The State begins by briefly arguing two procedural bars to our review of the merits: (i) Ruth's guilty plea waived all non-jurisdictional defects in his sentence, including MSR, and (ii)

Ruth's section 2-1401 petition was untimely because he filed it more than two years after the entry of judgment. The State's briefing on this point is sparse, with no citations to authority. See Ill. S. Ct. Rule 341(h)(7) (eff. Oct. 1, 2020) (Argument "*shall* contain *** citation of the authorities *** relied on." (Emphasis added.)). That said, we disagree with both procedural arguments.

¶ 13    First, Ruth's guilty plea did not waive his constitutional challenge to the statute imposing his MSR term. As this court has observed, "a guilty plea does not bar a claim on appeal 'where on the face of the record the court had no power to *** impose the sentence.' " *People v. Patterson*, 2018 IL App (1st) 160610, ¶ 20 (quoting *Class v. United States*, 583 U.S. ___, ___, 138 S. Ct. 798, 804 (2018)). In other words, if the claim does not contradict the terms of the indictment or plea agreement, we can consider it. *Id.* ¶ 21. Here, Ruth does not challenge the factual basis for his plea or the substantive reasonableness of his term-of-years sentence. Instead, he argues the court had no power to sentence him to an indeterminate MSR term. He, therefore, challenges "the [court]'s power to constitutionally [sentence] him," and his plea does not waive that challenge. See *id.*

¶ 14    We also find Ruth's section 2-1401 petition was not time-barred. Generally, a petition filed under section 2-1401 must be filed "not later than 2 years after the entry of the order or judgment." (Internal quotation marks omitted.) *People v. Abdullah*, 2019 IL 123492, ¶ 13. One of the two exceptions to the statute of limitations is "when the judgment was based on a statute that is facially unconstitutional and void *ab initio*." *Id.* Ruth's petition raised this type of facial constitutional challenge. His petition alleged the statute allowing his "MSR conditions [to be] imposed by the [Prisoner Review Board] are void *ab initio*." Whatever we think of the merits of Ruth's claim, it constitutes a facial constitutional challenge to the statutes requiring him to serve

an indeterminate MSR term with conditions imposed by the. Prisoner Review Board. Thus, we will consider his petition even though he filed it outside the two-year statute of limitations.

¶ 15                    *Constitutionality of the Statutes*

¶ 16    Ruth first argues that two provisions of the Code of Corrections (730 ILCS 5/5-8-1(d)(4),3-3-2(a)(3-5) (West 2018)), impermissibly allow the Prisoner Review Board, a "non-judicial body," to determine his MSR term. According to Ruth, this scheme violates the Illinois Constitution's separation of powers clause by improperly delegating the judicial function of imposing sentence to the executive branch. See Ill. Const. 1970, art. II, § 1. He also argues, applying the same reasoning, that the improper delegation of sentencing authority to the executive insulates the Prisoner Review Board from the requirements of the proportionate penalties clause. See Ill. Const. 1970 art. I, § 11. The State responds that the Prisoner Review Board did not determine Ruth's MSR term. Rather it administers the MSR term the trial court imposed. We review Ruth's facial constitutional challenge *de novo*. *E.g.*, *People v. Bochenek*, 2021 IL 125889, ¶ 9.

¶ 17    The State, in its brief and at oral argument, suggested that Ruth's claim fails based on existing Illinois Supreme Court precedent, namely *Rinehart*, 2012 IL 111719, and *People v. McChriston*, 2014 IL 115310. Neither case answers the unique separation of powers question Ruth raises.

¶ 18    In *Rinehart*, the court expressly limited its analysis to a "matter of statutory construction." *Rinehart*, 2012 IL 111719, ¶ 23. The appellate court had found that the trial court must set a determinate MSR term within the range provided by section 5-8-1(d)(4). *Id.* Our supreme court rejected the appellate court's conclusion and determined that the relevant statutory provisions "contemplate indeterminate MSR terms, not determinate terms." *Id.* ¶ 30. The court definitively

construed the statute in a manner that predicates Ruth's separation of powers claim, but it did not resolve that claim.

¶ 19    On the other hand, *McChriston* involved a separation of powers claim of a different sort. *McChriston*, 2014 IL 115310, ¶ 6. There, the trial court's sentencing order made no mention of his MSR term, and the defendant argued the Department of Corrections "added a three-year *** term to his 25-year sentence." *Id.* ¶ 3. Our supreme court rejected the argument finding, instead, that the statute operated to add a three-year term automatically, even where the trial court forgets to include it on the sentencing order. *Id.* ¶ 23. Because the Department of Corrections did not add the term, no violation of the separation of powers occurred. See *id.* Though based on the same Illinois constitutional provision, Ruth's claim is distinct.

¶ 20    Though our supreme court has not answered the separation of powers question presented here, we agree with the State that Ruth's argument fails on first principles. The Illinois Constitution declares "[t]he legislative, executive and judicial branches are separate" and "[n]o branch shall exercise powers properly belonging to another." Ill. Const. 1970, art. II, § 1. The clause is not meant "to produce a complete separation" between the branches and "does not forbid every exercise of functions by one branch of government that is conventionally exercised by another." *People v. Inghram*, 118 Ill. 2d 140, 146-47 (1987). When it comes to the relationship between the executive and judicial branches, provisions violate the clause when they "confer powers to one branch of government which properly should be exercised by another branch" or "usurp[ ] the authority of another branch." *Id.* To determine whether the statutory scheme for indeterminate MSR violates the clause, we must first understand "the kind of power involved." *People v. Bryant*, 278 Ill. App. 3d 578, 584 (1996).

¶ 21 The General Assembly has the power to create criminal offenses and to establish a "penological system." *People v. Williams*, 66 Ill. 2d 179, 187 (1977). Within that system, the judiciary holds the exclusive power to impose sentence. *E.g.*, *Morger*, 2016 IL App (4th) 140321, ¶ 55 (citing *People v. Montana*, 380 Ill. 596, 608 (1942)). Once a court imposes a sentence, the General Assembly then retains the power "to establish rules and regulations for the government and discipline of inmates," which the executive branch enforces through the Department of Corrections. *Williams*, 66 Ill. 2d at 187.

¶ 22 Essentially, the parties see the Prisoner Review Board's role in our indeterminate MSR scheme differently. According to Ruth, the Board's ability to "increase" his sentence by refusing to discharge him from MSR usurps judicial sentencing power. The State, on the other hand, sees the Board's ability to impose MSR conditions and monitor Ruth's compliance as no more than administering the sentence the trial court imposed. The State has properly construed the nature of MSR (formerly known as parole).

¶ 23 Illinois has long held that "in a legal sense, [MSR] does not diminish a judicially imposed sentence or in any way affect it." *Id*. (collecting cases). This follows because MSR "alters only the method and degree of confinement during the period of commitment" to the Department of Corrections. *Id.* Even where the trial court must impose a minimum sentence of incarceration before a defendant can be released on MSR, a defendant serving their MSR term remains subject to the authority of the Department of Corrections. *Id.* In that sense, the conditions the Prisoner Review Board imposes on defendants serving their MSR terms are the same as ordinary rules the Department of Corrections sets to maintain order in its detention facilities—the only difference is the defendant's physical location.

¶ 24    But, says Ruth, the problem lies in the indeterminate nature of his MSR term. The parties' dispute, once again, is a matter of perspective. Because the judicially imposed term is three years to life, Ruth argues the Prisoner Review Board gets to decide the number of years he will serve. The State responds, though not explicitly, that an indeterminate MSR term is essentially a life term that defendants can end *early* based on their compliance with the MSR terms the Prisoner Review Board imposed. We agree with the State.

¶ 25    The statute that imposes the MSR term for Ruth's offense requires him to serve at least three years on MSR "to a maximum of natural life." 730 ILCS 5/5-8-1(d)(4) (West 2018). The preamble to the subsection introduces the various MSR terms as "subject to earl[y] termination under Section 3-3-8." *Id.* § 5-8-1(d). Section 3-3-8 provides for early release or discharge "when it determines that [a defendant] is likely to remain at liberty without committing another offense." *Id.* § 3-3-8(b). Taking these sections together, describing Ruth's MSR term as "indeterminate" is something of a misnomer: the trial court essentially imposed a life term of MSR with the possibility of early termination after three years. This interpretation aligns with our supreme court's long-standing conception of MSR as "a matter of grace and executive clemency." *Hill v. Walker*, 241 Ill. 2d 479, 486 (2011) (collecting cases).

¶ 26    We can distill two truths about the nature of the Prisoner Review Board's administration of MSR. First, the conditions the Prisoner Review Board sets on defendants admitted to MSR are functionally the same as any other rule of prison administration aimed at controlling the behavior of those committed to the Department of Corrections. Second, decisions about admitting a defendant to MSR and releasing a defendant from MSR are "matter[s] of grace." As we discussed, both powers belong to the executive branch. We, therefore, reject Ruth's claim that the Prisoner

Review Board's administration of his MSR term of three years to life improperly intrudes on the judicial function of imposing sentence. Because each of his arguments under the proportionate penalties clause and separation of powers clause depends on this premise, they both must fail.

¶ 27    We are not convinced otherwise by Ruth's reliance, in this court and the trial court, on *Morger*, 2016 IL App (4th) 140321. The trial court rejected *Morger* largely because "case law from the fourth district appellate court *** is not binding to the first district, to which this court belongs." The tiral court's conception of *stare decisis* was incomplete and, therefore, incorrect. Generally, an appellate court's decision is binding "on the circuit courts *throughout the [s]tate*." (Emphasis added.) *State Farm Fire & Casualty Co. v. Yapejian*, 152 Ill. 2d 533, 539 (1992). There is a narrow exception where conflicts arise among the appellate districts. Then, and only then, a circuit court will either (i) follow the relevant decision from its home district if there is one or (ii) choose among the decisions from the competing appellate districts if the circuit court's home district has not weighed in. *Id.* at 540. *Morger* was binding on the circuit court to the extent it was analogous, as no contrary authority exists in the other Districts, including the First District.

¶ 28    We agree with the State, however, that *Morger* does not control the outcome. There, the Fourth District found a violation of the separation of powers clause after the trial court improperly delegated the task of setting probation conditions to Court Services. *Morger*, 2016 IL App (4th) 140321, ¶¶ 56-57. Critically, the court found that "imposition of probationary conditions is part of sentencing." *Id.* ¶ 57. As we have discussed, the trial court carried out its judicial function by imposing the term of years of MSR, but it is an executive function for the Prisoner Review Board to determine the conditions its parolees must satisfy to earn *early* relief from the judicially imposed sentence.

¶ 29   After oral argument, we allowed Ruth to cite *Dreyer v. Illinois*, 187 U.S. 71 (1902), and *George v. People*, 167 Ill. 447 (1897), as additional authority because panel members discussed *Dreyer* at oral argument and *Dreyer* cites *George*. The State has declined our offer to file a response on the merits of either supplemental authority. On further review, we find neither case helpful to the resolution of Ruth's claims. *Dreyer*, for its part, expressly disclaimed an intention to construe the separation of powers provision then in the Illinois Constitution. *Dreyer*, 187 U.S. at 83. The Court's conclusion goes no further than to say that the decision to allocate certain powers to certain branches of state government belonged exclusively to the states and would not implicate the due process clause of the fourteenth amendment. *Id.* at 83-84.

¶ 30   *George* is unhelpful for related reasons. There, the statutory scheme expressly contemplated participation in the parole decision by the court that sentenced the defendant and by the governor. *George*, 167 Ill. at 463-64. We agree with Ruth's argument insofar as he claims *George* does not apply—we cannot say what the Illinois Supreme Court would have thought of the current scheme for indeterminate MSR under the 1870 Illinois Constitution. Ruth argues the current scheme is more offensive to the separation of powers than the scheme in *George*. Still, under modern conceptions of separation of powers embodied in our current constitution, the Prisoner Review Board has not usurped the judicial function of imposing sentence and may constitutionally condition Ruth's release on the MSR terms it sets.

¶ 31                                 *Fees*

¶ 32   Though we disagree with Ruth's constitutional claim on the merits, we agree the trial court erred by imposing $170 in fees for an "entirely frivolous" petition. See 735 ILCS 5/22-105 (West 2018). We note that Ruth argues his section 2-1401 petition is not covered by section 22-105

because it was not a "second or subsequent petition." *Id.* § 22-105(a). We decline to address this question of statutory construction because, even assuming the frivolous filing statute applies to Ruth's petition, the trial court had no basis on which to impose the fees.

¶ 33    The trial court imposed fees and costs for three reasons: (i) Ruth's petition "lacked an arguable basis in law or in fact," (ii) Ruth's petition "did not have evidentiary support," and (iii) "the filings, in *toto*, were presented to hinder, cause unnecessary delay, and needless increase in the cost of litigation." See *id.* § 22-105(b)(1)-(2), (4). We disagree with each basis.

¶ 34    The State argues that Illinois law and the specific facts foreclose Ruth's petition. This argument is flatly inconsistent with the State's concession, at page 10 of its brief, that Ruth's "facial constitutional challenge on this specific statutory framework is novel to this Court." The State's concession coincides with our analysis rejecting both parties' reliance on previous decisions of this court and our supreme court. Issues that we have never addressed remain, almost by definition, "arguable in law or in fact."

¶ 35    The State does not defend the trial court's finding that Ruth's petition "did not have evidentiary support." We think this wise. Generally, facial constitutional challenges are not amenable to receiving evidence or to fact-finding because they require the challenger to allege "no set of circumstances under which the statute would be valid." *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 228 (2010). Ruth's claim cannot have lacked "evidentiary support" because he was not required to put in evidence.

¶ 36    We turn then to the trial court's conclusion that Ruth's petition was filed for purposes of delay or to increase the cost of litigation. Again, the State does not defend the trial court's fees and

costs order on this ground. The record also does not show Ruth attempting to delay, harass, or needlessly invoke the resources of the judicial system.

¶ 37    The list of Ruth's filings tells a story, not of delay or harassment, but of an uncounseled prisoner attempting to understand and then challenge the complicated law surrounding pleas, mandatory MSR terms, and the Department of Corrections' lamentable "violating at the door" policy. *Cf. Cordrey v. Prisoner Review Board*, 2014 IL 117155, ¶ 9 (describing the practice); see also *Ortiz v. Breslin*, 595 U.S. ___, 142 S. Ct. 914 (2022) (statement of Sotomayor, J., respecting denial of *certiorari*, explaining constitutional concerns with New York's similar policy). Ruth's section 2-1401 petition was the first (maybe second) filing in which he could have raised his constitutional challenge. Until this filing Ruth did not know (i) the correct term of his MSR and (ii) that the trial court could not, or would not, do anything to force the Department of Corrections to release him. No evidence supports a conclusion of delay, harassment, or needless increase of cost.

¶ 38    Subsection (a) of the statute requires the trial court to make "*specific* finding[s]" that a particular filing is frivolous within the meaning of the factors in subsection (b). (Emphasis added.) 735 ILCS 5/22-105(a) (West 2018). Reciting the ostensibly applicable statutory subsections will not do.

¶ 39    We vacate the order imposing $170 in fees and costs and remand to the circuit court to determine whether the $170 was deducted from Ruth's trust account and, if so, order a refund by the Cook County Treasurer.

¶ 40    Affirmed in part and vacated in part; cause remanded with directions.

¶ 41    JUSTICE COGHLAN, specially concurring:

¶ 42    While I agree with the majority's conclusion, I disagree with the majority's reasoning for vacating the fees and costs imposed by the trial court. The plain language of 735 ILCS 5/22-105 applies only to "a second or subsequent" section 2-1401 petition. 735 ILCS 5/22-105(a) (West 2018). Since this was defendant's first section 2-1401 petition, section 22-105 does not apply. In my view, no further analysis is necessary.