NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241536-U

NO. 4-24-1536

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 9, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Peoria County |
| ZACHARY J. HOCKER, | ) | No. 24CF518 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Paul P. Gilfillan, |
| | ) | Judge Presiding. |

JUSTICE VANCIL delivered the judgment of the court.
Justices Grischow and Cavanagh concurred in the judgment.

**ORDER**

¶ 1     *Held*:    The appellate court affirmed, finding the evidence was sufficient to show defendant threatened the use of force in committing criminal sexual abuse.

¶ 2     Following a jury trial, defendant, Zachary J. Hocker, was convicted of home invasion (720 ILCS 5/19-6(a)(6) (West 2024)) and criminal sexual abuse (*id.* § 11-1.50(a)(1)). Defendant appeals, arguing the State failed to prove beyond a reasonable doubt that he used or threatened force while committing the sexual offense. Because his conviction for home invasion was predicated on his conviction for sexual abuse, he argues that both convictions must be reversed.

¶ 3     For the following reasons, we disagree with defendant and affirm the trial court's judgment.

¶ 4                              I. BACKGROUND

¶ 5     On June 10, 2024, defendant was charged by information with one count of home invasion, a Class X felony (*id.* § 19-6(a)(6), (c)). The charges alleged that he knowingly and without authority entered the dwelling place of S.G. and remained therein, knowing one or more persons were present within the dwelling, and committed the offense of criminal sexual abuse. He was later indicted on this offense, as well as two additional offenses: unlawful restraint, a Class 4 felony (*id.* § 10-3(a)(b)), and criminal sexual abuse, also a Class 4 felony (*id.* § 11-1.50(a)(1), (d)).

¶ 6     The case proceeded to trial. S.G. testified that on June 7, 2024, she was living in an apartment that she was subleasing from defendant. At the time, she worked from 10 p.m. to 6 a.m. and slept during the day. She stated that she awoke at 1 p.m. to defendant lying beside her in bed and touching her buttocks. She was wearing a top and bra but no underwear or pants. She stated that she repeatedly told defendant to stop, but he continued to touch her buttocks and vagina with his fingers.

¶ 7     She stated that she got out of bed and went to the living room to put clothes on. Defendant followed her. Upon entering the living room, she noticed that some of the wooden frame around her front door was broken. When asked if she considered leaving at this point, she stated, "I thought about leaving, but I decided not to. That's when he put the piece of wood from the door frame up against the door." A photo was admitted showing a piece of wood that S.G. testified was approximately two-and-a-half to three-feet long and weighed approximately one pound. When later asked to elaborate on why she did not leave, she responded, "I was too scared to." When asked if she was afraid defendant would become violent, she responded affirmatively.

¶ 8     S.G. searched for her work phone and personal phone, but she was not able to find either. She sat on her couch and used her work laptop to message an employee group chat. In the chat, she asked for someone to call 911. While this was happening, defendant, dressed only in his

underwear, stood in front of S.G.'s laptop and touched her breasts "[a]t least five times" She stated that although she moved defendant's hand away and told him not to touch her, he continued to do so, stating, "Come on," and, "This is what you wanted." Defendant then sat beside her on the couch and continued touching her buttocks, only stopping when her coworker and defendant's wife, Alex, arrived at the apartment after receiving S.G.'s messages in the employee group chat.

¶ 9    On cross-examination, S.G. agreed that defendant did not interact with her hand and would allow her to push him away before beginning to touch her again. She further stated that defendant never physically tried to prevent her from leaving, never held her down, never used "any force against [her]," and never told her he was going to use any force against her.

¶ 10    Joy Custer testified that she worked with both S.G. and Alex. All three women were members of an employee group chat that contained approximately 73 people. She stated that on June 7, 2024, S.G. sent several messages to the group, beginning at 1:28 p.m. A printout of the messages was admitted over defense counsel's objection. In the messages, S.G. addresses Alex, asking her to call 911. She states, "HELP ME HE[']S HERE HE BROKE IN," and, "TELL THEM TO USE FORCED ENTRY."

¶ 11    John Mobeck, a patrol officer who responded to a dispatch call from S.G.'s apartment, testified that the state of S.G.'s apartment door suggested it had recently been kicked in. He based this conclusion on the fact that the door was open, with its deadbolt extended, and there were bits of broken door frame lying on the floor.

¶ 12    At the conclusion of the State's evidence, the defense made a motion for a directed verdict. Among other things, the defense argued the State had failed to prove criminal sexual abuse because it had not shown defendant used force or the threat of force when he touched S.G. The State responded that threats did not have to be verbal and noted that defendant had broken into

S.G.'s apartment, kicked down the door, and touched her while she was unclothed in her bed. Further still, S.G. had messaged the group chat for help and testified that she was afraid defendant would become violent. The State argued, "To suggest that the entire situation wasn't done with some element of force is certainly ludicrous." The trial court denied the motion for a directed verdict, stating, "[J]ust because it doesn't fall within the traditional definition of someone getting beaten up while they're being assaulted doesn't mean that [force] couldn't be established. And the evidence in this case is enough for the jury to conclude that there was a threat of use of force."

¶ 13    The jury found defendant guilty of home invasion and criminal sexual abuse. It found him not guilty of unlawful restraint. At a sentencing hearing on November 27, 2024, defense counsel made a motion for a new trial, again arguing the State had failed to prove defendant used force or the threat of force in effectuating the sexual abuse. The trial court denied the motion. Defendant's two counts were merged, and he was sentenced to 15 years in the Illinois Department of Corrections.

¶ 14    This appeal followed.

¶ 15                                    II. ANALYSIS

¶ 16    On appeal, defendant argues the State failed to prove beyond a reasonable doubt that he used or threatened force when he touched S.G. Because this is an essential element of criminal sexual abuse, which in turn is a lesser-included offense of home invasion (see *People v. Skaggs*, 2019 IL App (4th) 160335, ¶ 39), defendant argues that both convictions must be reversed.

¶ 17    When reviewing the sufficiency of the evidence, we must consider whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Morger*, 2016 IL App (4th) 140321, ¶ 27. In making this determination, we will allow all reasonable inferences from

- 4 -

the record in favor of the State. *Id.* It is not our role to retry a defendant. *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007). Because the jury is in the best position to assess the credibility of witnesses, its findings in that regard are entitled to great weight. *Id.* at 114-15. We will reverse a conviction only where the evidence is so unreasonable, improbable, or unsatisfactory that it creates a reasonable doubt of a defendant's guilt. *Id.* at 115.

¶ 18　　　　To convict a defendant of criminal sexual abuse, the State must prove that the defendant "commit[ted] an act of sexual conduct by the use of force or threat of force." 720 ILCS 5/11-1.50 (West 2024). Section 11-0.1 of the Criminal Code of 2012 (*id.* § 11-0.1) defines "[f]orce or threat of force" as follows:

> "[T]he use of force or violence or the threat of force or violence, including, but not limited to, the following situations:
>
>> (1) when the accused threatens to use force or violence on the victim or on any other person, and the victim under the circumstances reasonably believes that the accused has the ability to execute that threat; or
>>
>> (2) when the accused overcomes the victim by use of superior strength or size, physical restraint, or physical confinement."

"The force necessary to prove the offense requires something more than the force inherent in the sexual touching itself." *People v. Pellet*, 2024 IL App (4th) 231519-U, ¶ 38. There is no precise standard establishing how much force must be used, and each case must be considered on its own facts. *Id.* "When evaluating whether force was used, we may consider the size and strength of the defendant and the victim, along with the place and conditions under which the incident occurred." *Id.*

¶ 19　　　　Here, defendant argues only that the evidence was insufficient to show he used

force in committing the acts of sexual conduct against S.G. He states that he did not grab S.G.'s hand when she pushed him away or hold her down at any point. Moreover, he notes that S.G. herself testified that she was never threatened. He concedes the act of touching S.G. was "inexcusable conduct" but notes that "the State proceeded on charges that required it to prove beyond a reasonable doubt that [he] used force or the threat of force, not manipulation."

¶ 20　　　The State, in turn, argues that the totality of defendant's conduct created a threat of harm. It specifically notes that defendant got into bed with S.G. while she was unclothed from the waist down and he was wearing only underwear; touched her breasts, buttocks, and vagina; broke into her apartment; placed a large piece of wood against her apartment door to block her exit; and continued to touch her despite her repeated demands to stop. The State asserts that defendant is merely seeking a retrial on appeal and urges us to affirm the decision of the jury.

¶ 21　　　We agree with the State. As noted, when determining whether a defendant threatened the use of force in committing criminal sexual abuse, we may consider the circumstances surrounding the encounter. *Id.* We find the circumstances here were sufficient to allow a reasonable trier of fact to find a threat of force.

¶ 22　　　To begin, S.G. testified that upon entering her living room, she observed that her front door had been forced open, resulting in a broken door frame. This was corroborated by Officer Mobeck, who testified that, when he arrived, the apartment door stood open amidst scattered pieces of broken door frame, with its deadbolt still extended. S.G. also testified that not long after entering the living room, defendant picked up an approximately three-foot piece of the broken frame and placed it "up against the door."

¶ 23　　　We find these circumstances sufficiently conveyed a threat of force. At the time defendant touched S.G. in the living room, S.G. was aware that not long before, defendant had

used a seemingly substantial amount of force to break through her deadbolt lock, splinter her wooden door frame, and enter her apartment. From this alone, she could reasonably have believed that defendant was willing to use violence in pursuit of accomplishing his goal of sexual contact with her. Indeed, he already had.

¶ 24   Yet there existed further evidence to support S.G.'s belief that force would be used against her if she resisted defendant. Defendant repeatedly touched S.G., despite her firm assertions not to, and followed her from her bedroom to her living room to continue his unwanted contact. Further, critically, when entering the living room, defendant did not simply sit beside S.G. on the couch to continue touching her. Instead, he took the time to move a three-foot plank of wood and place it, not out of the way, but across the apartment's exit, which was an act that clearly communicated an intent to exert physical force on S.G. if necessary. We find it significant that S.G. exited her bedroom to avoid defendant but, after entering the living room and seeing the state of the door frame and defendant's act of placing a piece of wood across the door, she did not similarly attempt to leave the living room to escape him. She herself confirmed that this decision resulted from the fear that defendant would become violent if she attempted to leave. While defendant may not have explicitly threatened to harm S.G. if she did not comply with his wishes, given the circumstances surrounding the interaction, it was nevertheless reasonable for her to believe that he would. See *People v. Blom*, 2019 IL App (5th) 180260, ¶ 33 (finding an implicit threat of force based on the circumstances surrounding the encounter between the defendant and the victim; specifically, that the victim was a woman locked in a dark room, alone and naked with a man, where she thought no one could hear her yell, while he committed a sex act on her without her consent).

¶ 25   Defendant argues that the force he used to enter the apartment does not constitute

- 7 -

the requisite force necessary to establish criminal sexual abuse because the act of breaking down S.G.'s door occurred prior to the unwanted contact and she was unaware of any force he used against the door because she was asleep when he entered the apartment. While this is true, the threat implicit in defendant's use of force to enter S.G.'s apartment remained ongoing throughout the entire encounter. When defendant continued his nonconsensual touching of S.G. in her living room, she was aware of defendant's use of force in entering her apartment and the threat implicit in it. We find defendant's argument on this point unpersuasive.

¶ 26 Defendant further notes that S.G. explicitly testified that defendant "did not use force or tell her he was going to use force." This is accurate but does not help defendant's argument in light of S.G.'s testimony as a whole. On cross-examination, S.G. was asked if defendant held her down or grabbed her hand when she attempted to push him away. She stated that he did not. Defense counsel asked, "[Defendant] didn't use any force against you; is that fair?" S.G. responded, "No, no, he did not use any force." Counsel then questioned, "And he did not tell you that he was doing to use force against you, did he?" S.G. responded, "No."

¶ 27 While S.G. stated that defendant did not use force against her or explicitly tell her that he was going to use force against her, she did not testify that she did not feel threatened. In fact, she testified to the opposite when she stated that after defendant placed the broken piece of door frame across the apartment door, she was too afraid to leave the apartment because she feared he would become violent. S.G.'s testimony is consistent with our conclusion that the circumstances surrounding the encounter between S.G. and defendant conveyed an implicit threat, even in the absence of defendant verbally announcing that threat.

¶ 28 Defendant also argues that his act of placing the wood across the door was immaterial because the wood was light and S.G. could easily have moved it. This may be true, but

our conclusion is not that S.G. was actually physically prevented from leaving her apartment by the piece of wood (although we do acknowledge that S.G. appeared to believe the wood presented at least some obstacle, as she asked her group chat to tell police officers to use forced entry despite the door being unlocked and the frame being significantly cracked). Rather, as stated, we find that defendant's placement of that wood across the apartment's exit was one of many acts that indicated, albeit without words, that he was prepared to use force to continue his acts of sexual abuse on S.G.

¶ 29     We therefore find the evidence was sufficient to allow the jury to conclude that defendant committed the offense of criminal sexual abuse. We affirm his conviction. Further, because defendant's sole argument concerning his home invasion conviction is premised on the State failing to prove he committed criminal sexual abuse, we also affirm that conviction.

¶ 30                    III. CONCLUSION

¶ 31     For the reasons stated, we affirm the trial court's judgment.

¶ 32     Affirmed.